**UNITED STATES of America ex rel. John CLAUSER, Petitioner-Appellant,**

v.

**Stephen McCEVERS, Warden, and Tyrone Fahner, Respondents-Appellees.**

No. 83–1392.

United States Court of Appeals, Seventh Circuit.

Argued Sept. 22, 1983.

Decided April 6, 1984.

Julius Lucius Echeles, Chicago, Ill., for petitioner-appellant.

Michael V. Accettura, Asst. Atty. Gen., Chicago, Ill., for respondents-appellees.

Before PELL, COFFEY and FLAUM, Circuit Judges.

COFFEY, Circuit Judge.

The appellant, John Clauser, appeals the denial of his petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. In essence Clauser alleges that his Fifth Amendment right to be free from double jeopardy was violated when his first trial was terminated as a result of a defective indictment (the defect being neither caused by the prosecutor nor within the scope of his knowledge) and he was subsequently reindicted and convicted of the offenses charged in the original indictment.[1] We affirm.

## I.

The petitioner and a co-defendant were indicted for unlawful delivery of more than 30 grams of a controlled substance containing cocaine. It became apparent, during the first trial through the testimony of the state's witnesses, that certain state law enforcement officers had misrepresented evidence to the grand jury that had indicted the petitioner. Clauser and his co-defendant, Arthur Jones, thereupon moved for judgment of acquittal. The trial court declined to grant their motion for acquittal, finding that the record contained sufficient other evidence to sustain a conviction. With regard to the conduct of the officers in question, the judge stated that he did not believe that they had intentionally lied to the grand jury, rather, he characterized their acts as being "grossly negligent," or "grossly careless." The court concluded, however, that the trial should be terminated as the indictment, based partly on misleading or false testimony, was invalid. In the trial court's view, a conviction founded on this invalid indictment could not be upheld on appeal.

Following his reindictment, the petitioner moved for dismissal of this second indictment on double jeopardy grounds. The trial court denied Clauser's motion for dismissal and upon retrial, he was convicted

---

1. The Fifth Amendment provides: "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb ...." The Double Jeopardy Clause of the Fifth Amendment was made applicable to the States through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

of the offense originally charged, unlawful delivery of a controlled substance (cocaine), and sentenced to a term of imprisonment of six to eighteen years. The petitioner appealed his conviction to the Illinois Appellate Court on the ground that his reindictment, retrial and conviction violated double jeopardy. The state appellate court upheld his conviction finding the Supreme Court's decision in *United States v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978), to be controlling. *People v. Clauser*, 73 Ill. App.3d 145, 29 Ill.Dec. 368, 391 N.E.2d 793 (1979), *cert. denied*, 446 U.S. 908, 100 S.Ct. 1833, 64 L.Ed.2d 260 (1980).

■ Clauser then filed the instant petition for a writ of habeas corpus in the United States District Court for the Central District of Illinois, alleging that the state appellate court misapplied the *Scott* decision, and that his conviction violated both double jeopardy and due process. The district court, while finding the *Scott* decision inapplicable to the facts of this case, denied Clauser's petition for a writ of habeas corpus. The court held that Clauser's Fifth Amendment Double Jeopardy rights had not been violated as the state trial court's decision to terminate his original trial was occasioned by "manifest necessity." *Clauser v. Shadid*, 563 F.Supp. 392, 395 (C.D.Ill. 1983).[2]

It is from the district court's denial of a writ of habeas corpus that Clauser appeals.

## II.

### A.  MANIFEST NECESSITY.

■ The Fifth Amendment Double Jeopardy Clause protects a criminal defend-

ant from repeated prosecutions for the same offense. *United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976).

> "Underlying this constitutional safeguard is the belief that 'the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.' "

*Id.* (*quoting Green v. United States*, 355 U.S. 184, 187–88, 78 S.Ct. 221, 223–24, 2 L.Ed.2d 199 (1957)). The Double Jeopardy Clause also protects a criminal defendant's "valued right to have his trial completed by a particular tribunal . . . ." *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). The protection afforded by the Double Jeopardy Clause, however, is not one which in all cases requires that the state vindicate its public interest in the enforcement of criminal laws in a single proceeding. *United States v. Jorn*, 400 U.S. 470, 483–84, 91 S.Ct. 547, 556–57, 27 L.Ed.2d 543 (1971) (plurality opinion). Assuming the defendant was not acquitted, if the government can establish that the termination of the defendant's first trial was occasioned by "manifest necessity," the Constitution's double jeopardy prohibition does not provide the defendant with protection against retrial. *See United States v. Perez*, 9 Wheat. 579, 6 L.Ed. 165 (1824); *Illinois v. Somerville*, 410 U.S. 458, 461–

---

**2.** As noted above, Clauser raised a due process claim in both the district court and this court. That claim, as far as we can discern, was based on the fact that the state trial court originally refused to retry his co-defendant on double jeopardy grounds but did not bar his own retrial and conviction. Clauser argued that this inconsistency violated fundamental fairness and thereby raised a due process issue. Clauser appears to have abandoned this argument in his reply brief after the government pointed out that the Illinois Appellate Court had reversed the trial court's order regarding his co-defendant. *People v. Jones*, 75 Ill.App.3d 945, 31 Ill.

Dec. 65, 393 N.E.2d 1372 (3d Dist.1979), *cert. denied*, 449 U.S. 847, 101 S.Ct. 132, 66 L.Ed.2d 56 (1980). If any due process contention remains, we simply note that upon review of the record as a whole we have not found that his retrial and conviction in any way violated fundamental fairness and thus his due process rights and we therefore express our agreement with the district court's denial of this claim, *Clauser v. Shadid*, 563 F.Supp. 392, 396 (C.D.Ill. 1983). Based on our holding regarding any due process claim, we will only address the double jeopardy question in the remainder of this opinion.

63, 93 S.Ct. 1066, 1069–70, 35 L.Ed.2d 425 (1973); and *United States v. DiFrancesco,* 449 U.S. 117, 130, 101 S.Ct. 426, 433, 66 L.Ed.2d 328 (1980). When the trial court's decision to terminate the initial proceeding is occasioned by "manifest necessity," the double jeopardy bar of retrial is removed in favor of the protection of "the public's interest in fair trials designed to end in just judgments." *Wade,* 336 U.S. at 689, 69 S.Ct. at 837.

■ The facts of this case are analogous to the granting of a mistrial, or the dismissal of an action without the defendant's consent. In the present case the defendant did not move for mistrial, rather he moved for judgment of acquittal. As has already been indicated, the trial court denied the defendant's motion for judgment of acquittal on the grounds that the prosecution had presented sufficient independent and untainted evidence to support a conviction on the offense charged. While the record does not reveal an objection on Clauser's part to the court's decision to dismiss the indictment (presumably without prejudice), it is apparent the trial was terminated as a result of the problem underlying that indictment and the decision to discontinue the trial was without Clauser's affirmative consent. As the preceding analysis demonstrates, in cases where the trial is terminated without the defendant's consent, the government must establish that the termination was occasioned by "manifest necessity" in order to avoid the Fifth Amendment double jeopardy bar to reindictment and retrial. *United States v. DiFrancesco,* 449 U.S. at 130, 101 S.Ct. at 433. Thus, the "manifest necessity" analysis applies in this case and must be fulfilled to sustain Clauser's conviction.

To gain an understanding of the standard by which "manifest necessity" is to be judged, reference must be made to *United States v. Perez,* 9 Wheat. 579, 6 L.Ed. 165 (1824), the seminal decision construing the Double Jeopardy Clause in the context of a mistrial ordered over the defendant's objection. In *Perez* the Court stated:

"We are of the opinion, that the facts constitute no legal bar to future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defence. We think, that in all cases of this nature, the law has invested courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and in capital cases especially, courts should be extremely careful how they interfere with any of the chances of life, in favor of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the judges, under their oaths of office."

*Id.* 9 Wheat. at 580. Thus, the question is whether the trial court exercised sound discretion in terminating the first proceeding. Courts that have subsequently considered the question of when and how "manifest necessity" arises continue to hold that trial judges possess broad discretion in determining the propriety of a declaration of mistrial. With reference to this point, the Supreme Court stated in *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973):

"[I]n *Gori v. United States,* 367 U.S. 364 [81 S.Ct. 1523, 6 L.Ed.2d 901] (1961), the Court again underscored the breadth of a trial judge's discretion, and the reasons therefor, to declare a mistrial.

'Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the

trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment.' *Id.,* at 368 [81 S.Ct. at 1526].

"In reviewing the propriety of the trial judge's exercise of his discretion, this Court, following the counsel of Mr. Justice Story, has scrutinized the action to determine whether, in the context of that particular trial, the declaration of a mistrial was dictated by 'manifest necessity' or the 'ends of public justice.' The interests of the public in seeing that a criminal prosecution proceed to verdict, either of acquittal or conviction, need not be forsaken by the formulation or application of rigid rules that necessarily preclude the vindication of that interest. This consideration, whether termed the 'ends of public justice,' *United States v. Perez, supra,* [9 Wheat.] at 580, or, more precisely, 'the public's interest in fair trials designed to end in just judgments,' *Wade v. Hunter, supra,* [336 U.S.] at 689 [69 S.Ct. at 837], has not been disregarded by this Court."

*Somerville,* 410 U.S. at 462–63, 93 S.Ct. at 1069–70.

The Supreme Court's more recent decision in *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) likewise looks to the trial court's exercise of sound discretion in arriving at its determination of whether or not the declaration of a mistrial was occasioned by "manifest necessity."

"Our conclusion that a trial judge's decision to declare a mistrial based on his assessment of the prejudicial impact of improper argument is entitled to great deference does not, of course, end the inquiry. As noted earlier, a constitutionally protected interest is inevitably affected by any mistrial decision. The trial judge, therefore, 'must always temper the decision whether or not to abort the trial by considering the importance to the defendant of being able, once and for all, to conclude his confrontation with society through the verdict of a tribunal he might believe to be favorably disposed to his fate.' *United States v. Jorn,* 400 U.S., at 486 [91 S.Ct. at 558] (Harlan, J.). In order to ensure that this interest is adequately protected, reviewing courts have an obligation to satisfy themselves that, in the words of Mr. Justice Story, the trial judge exercised 'sound discretion' in declaring a mistrial."

*Id.* at 514, 98 S.Ct. at 834–35. It should also be noted that the Court in *Arizona v. Washington,* held that an express finding of "manifest necessity" by the trial court is not required for there to be a sound exercise of discretion on the trial court's part. As long as the record provides sufficient justification for the state court's ruling,

"[t]he state trial judge's mistrial declaration is not subject to collateral attack in a federal court simply because he failed to find 'manifest necessity' in those words or to articulate on the record all the factors which informed the deliberate exercise of his discretion."

*Id.* at 517, 98 S.Ct. at 836 (footnote omitted).

In light of the foregoing review of the "manifest necessity" standard, it is apparent from the facts in this case that the trial judge exercised sound discretion in terminating the initial proceeding. Testimony was received at trial indicating that one officer had averred in an affidavit for a search warrant (to search Clauser's car and a co-defendant's residence) that he had field-tested certain suspected controlled substances, when in fact he had not done so. The testimony also revealed that another officer had testified before the first grand jury that he had personally witnessed certain events involving the petitioner when in fact he had not personally witnessed those events, but rather was testifying from another officer's report. Upon discovery of this misleading grand jury testimony, the trial court dismissed the indictment based on his belief that an indictment founded in part upon misleading or false testimony or evidence was invalid. In the trial judge's view, a conviction based

on the invalid indictment could not be upheld on appeal, and he therefore decided to terminate the trial rather than continue a fatally tainted proceeding.

In Illinois "a court could properly dismiss an indictment based upon perjured testimony if the denial of due process was established 'with certainty.'" *People v. Rivera,* 72 Ill.App.3d 1027, 28 Ill.Dec. 669, 677, 390 N.E.2d 1259, 1267 (1979). This holding has been recently reaffirmed in *People v. Wolfe,* 114 Ill.App.3d 841, 70 Ill.Dec. 633, 636–37, 449 N.E.2d 980, 983–84 (1983). The false or misleading nature of the evidence presented to the first grand jury is clearly apparent from the testimony elicited at trial. Thus, the state trial court's termination of the trial upon receiving this evidence fulfills the requirements of "manifest necessity" since in his considered view of the circumstances, no valid conviction could have been based on the tainted evidence.[3] *See Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973). In the instant case, as in *Arizona v. Washington,* the public's interest in obtaining a fair trial designed to end in a just judgment outweighs the petitioner's interest in having the trial concluded before the first jury impaneled. *See Arizona v. Washington,* 434 U.S. at 516, 98 S.Ct. at 835.

The Supreme Court's decision in *Illinois v. Somerville,* convincingly supports a finding that the trial judge's mistrial declaration was grounded on "manifest necessity." In *Somerville,* the Court was faced with a situation in which the state trial judge had declared a mistrial after a jury had been sworn and the trial had commenced.[4] The facts of that case revealed that the morning after the jury was impaneled, the prosecutor informed the judge that the indictment failed to allege a necessary element of the crime charged and thus was fatally defective. The trial judge thereupon granted the state's motion for a mistrial, and the defendant was subsequently reindicted and convicted. On appeal from that conviction, the Supreme Court stated:

"A trial judge properly exercises his discretion to declare a mistrial if an impartial verdict cannot be reached, or if a verdict of conviction could be reached but would have to be reversed on appeal due to an obvious procedural error in the trial."

*Id.* 410 U.S. at 464, 93 S.Ct. at 1070. In essence, the *Somerville* Court found the defect in the indictment to be an obvious procedural error and therefore held that the trial judge's declaration of a mistrial was not an abuse of discretion. *Id.* at 468, 93 S.Ct. at 1072. In the court's view:

"The trial judge was faced with a situation . . . in which a procedural defect might or would preclude the public from either obtaining an impartial verdict or keeping a verdict of conviction if its evidence persuaded the jury. If a mistrial were constitutionally unavailable in situations such as this, the State's policy could only be implemented by conducting a second trial after verdict and reversal on appeal, thus wasting time, energy, and money for all concerned. Here, the trial judge's action was a rational determination designed to implement a legitimate state policy, with no suggestion that the implementation of that policy in this manner could be manipulated so as to prejudice the defendant. This situation is thus unlike *Downum* [*v. United States,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963)], where the mistrial entailed not only a delay for the defendant, but also operated as a post-jeopardy continuance to allow the prosecution an opportunity to strengthen its case. Here, the delay was minimal, and the

---

**3.** Note that the invalidity of the indictment and thus the subsequent declaration of mistrial was through no fault of the prosecutor. *See* discussion, *infra.*

**4.** The petitioner attempts to distinguish *Illinois v. Somerville,* 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973) from this case by suggesting

that the jury in *Somerville* was not sworn in and thus no jeopardy attached. Petitioner's Brief at 8. A review of that decision, however, clearly indicates that, contrary to the defendant's characterization, "[t]he case was called for trial and a jury impaneled and sworn on November 1, 1965." *Id.* at 459, 93 S.Ct. at 1068.

mistrial was, under Illinois law, the only way in which a defect in the indictment could be corrected. Given the established standard of discretion set forth in *Perez, Gori,* and *Hunter,* we cannot say that the declaration of a mistrial was not required by 'manifest necessity' or the 'ends of public justice.' "

*Somerville,* 410 U.S. at 468–69, 93 S.Ct. at 1072–73. The preceding reasoning is also applicable to the present case where the indictment was invalid not because it failed to allege an essential element but because it was based on false or misleading testimony.

Our decision that "manifest necessity" warranted the trial court's decision to dismiss is also supported by this court's holding in *United States v. Cyphers,* 553 F.2d 1064 (7th Cir.), *cert. denied,* 434 U.S. 843, 98 S.Ct. 142, 54 L.Ed.2d 107 (1977). In that case, our court found that an inadvertent error committed by one of the prosecution's witnesses violated a co-defendant's rights and thereby tainted the first proceeding, was sufficient to justify the declaration of mistrial as a "manifest necessity" and thus a subsequent retrial did not violate the defendant's double jeopardy rights. The court stated:

"We disagree, however, with Cyphers' contention that his rights under the double jeopardy clause were violated by the procedure used in this case. A defendant's 'valued right' to go to the first jury must at times be subordinated to 'the public's interest in fair trials designed to end in just judgments.' *Wade v. Hunter, supra,* [336 U.S.] at 689, 69 S.Ct. at 837. Where a 'manifest necessity' exists, trial courts are given wide latitude to declare a mistrial and order a new trial so that the ends of public justice will not be defeated by inadvertent errors infecting the first proceeding. *United States v. Dinitz,* 424 U.S. 600, 96 S.Ct. 1075, 1079–80, 47 L.Ed.2d 267 (1976); *United*

*States v. Perez,* 22 U.S. (9 Wheat.) 579, 580, 6 L.Ed. 165 (1824)."

*Id.* at 1068 (footnote omitted). While the state trial judge did not make an explicit finding of "manifest necessity," we are convinced that the record in this case establishes that the trial judge's mistrial declaration was, in fact, occasioned by "manifest necessity." [5] As the record clearly indicates, once the trial judge became aware that false or misleading testimony was presented to the grand jury, he exercised sound discretion in holding that a conviction based on such a tainted indictment could not withstand scrutiny on appeal and that he had no alternative but to terminate the proceedings. Thus, we are in full accord with the district court's holding that:

"The record clearly demonstrates that the trial judge acted responsibly and deliberately when he determined that a conviction based on an invalid indictment could not withstand appeal and that he had no alternative but to terminate the proceedings. Indeed, '[i]f an error would make reversal on appeal a certainty, it would not serve "the ends of public justice" to require that the Government proceed with its proof when, if it succeeded before the jury, it would automatically be stripped of its success by an appellate court.' *Illinois v. Somerville,* 410 U.S. at 464, 93 S.Ct. at 1070."

*Clauser v. Shadid,* 563 F.Supp. at 395.

The petitioner, however, argued, for the first time at oral argument before this court, that had the trial proceeded to completion and had the jury found Clauser guilty, the conviction might not have been reversed on appeal. The petitioner contends that although there were misrepresentations made by the officer to the grand jury, there was enough other evidence presented to the grand jury to support the indictment and it therefore would have withstood any attack on appeal. Thus, the petitioner appears to assert that termination of the first proceedings was not "mani-

---

**5.** As previously noted, *Arizona v. Washington,* 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717 (1978) clearly holds that an explicit trial court finding of "manifest necessity" is not a constitutional requirement.

festly necessary" and double jeopardy bars any reindictment and retrial. We decline to pass on Clauser's new argument as it was not made to the district court and was therefore waived. As our court recently stated:

"appellant's failure to present this legal issue to the district court results in a waiver of that issue on appeal. As this court has stated on numerous occasions, 'it is a well-established general proposition that a litigant cannot present to this court as a ground for reversal an issue which was not presented to the trial court and which it, therefore, had no opportunity to decide.'"

United States v. Carter, 720 F.2d 941, 945 (7th Cir.1983) (quoting Holleman v. Duckworth, 700 F.2d 391, 394–95 (7th Cir.), cert. denied, — U.S. ——, 104 S.Ct. 116, 78 L.Ed.2d 116 (1983)). See also United States ex rel. Moore v. Brierton, 560 F.2d 288, 291 (7th Cir.1977), cert. denied, 434 U.S. 1088, 98 S.Ct. 1285, 55 L.Ed.2d 794 (1978).

■ Even if we were to ignore this procedural obstacle and reach the merits of the defendant's argument, we would decline to reverse the district court. As previously stated, the decision whether or not to declare a mistrial is within the sound discretion of the trial judge. When properly exercised that discretion must be accorded some degree of deference on review. See Illinois v. Somerville, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); Gori v. United States, 367 U.S. 364, 81 S.Ct. 1523, 6 L.Ed.2d 901 (1961); and Wade v. Hunter, 336 U.S. 684, 69 S.Ct. 834, 93 L.Ed. 974 (1949). Such deference is clearly apparent in the Supreme Court's Gori v. United States decision. In that case, the reasons for the trial court's decision to declare a mistrial, while it appeared to be intended to prevent the prosecutor from eliciting "other crimes" evidence against the accused, were not "entirely clear." In fact, the court of appeals stated that the trial court had displayed an "overzealousness" and had acted "too hastily." In its review of the decision to declare a mistrial, the Supreme Court held:

"Since 1824 it has been settled law in this Court that 'The double-jeopardy provision of the Fifth Amendment ... does not mean that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment.' Wade v. Hunter, 336 U.S. 684, 688 [69 S.Ct. 834, 837, 93 L.Ed. 974].... Where, for reasons deemed compelling by the trial judge, who is best situated intelligently to make such a decision, the ends of substantial justice cannot be attained without discontinuing the trial, a mistrial may be declared without the defendant's consent and even over his objection, and he may be retried consistently with the Fifth Amendment.... It is also clear that 'This Court has long favored the rule of discretion in the trial judge to declare a mistrial and to require another panel to try the defendant if the ends of justice will best be served ...,' Brock v. North Carolina, 344 U.S. 424, 427 [73 S.Ct. 349, 350, 97 L.Ed. 456], and that we have consistently declined to scrutinize with sharp surveillance the exercise of that discretion."

Gori, 367 U.S. at 367–68, 81 S.Ct. at 1526 (citations and footnote omitted).

Our court has taken the position that reversal of a conviction upon appeal need not be a certainty in order to justify a trial judge's decision to declare a mistrial based on a perceived infection of the initial proceeding. In United States v. Cyphers, 553 F.2d 1064 (7th Cir.1977), this court stated:

"We believe that, in the circumstances of this case, declaration of a mistrial was manifestly necessary to serve the ends of public justice. Although we cannot say that a reversal would have been a certainty had Cyphers been convicted after being forced to proceed to trial alone, his due process objection to that procedure had sufficient merit for the trial judge, in the exercise of sound discretion, to have determined that the ends of public justice would be better served by declaring a mistrial and ordering a new trial."

553 F.2d at 1068 (*citing Illinois v. Somerville*, 410 U.S. 458, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973)) (emphasis added).

Thus, even if we could not say that reversal of Clauser's conviction (if the trial had continued) would have been a "certainty," we believe that the Fifth Amendment question raised by the false or misleading evidence presented to the grand jury was of sufficient merit to justify the trial judge's decision, in the exercise of sound discretion, to terminate the proceedings. That decision was thus occasioned by the requisite "manifest necessity."

### B. PROSECUTORIAL MISCONDUCT

In his second argument, the petitioner admits that the prosecutor engaged in no wrongdoing, "there is no suggestion that the prosecutor himself was responsible," however, he contends that the misconduct on the part of the police witnesses before the grand jury should be attributed to the prosecutor for purposes of our constitutional analysis. We decline to adopt his position. The petitioner cites a wealth of authority wherein police misconduct, outside the knowledge of the prosecutor, was deemed sufficient to overturn a defendant's *first* conviction. *See, e.g., Curran v. State of Delaware*, 259 F.2d 707, 713 (3d Cir.1958); *Barbee v. Warden, Maryland Penitentiary*, 331 F.2d 842, 846 (4th Cir.1964). These cases, however, do not address the issue of double jeopardy but rather are appeals from initial proceedings and convictions. The defendant does not cite any authority in support of the proposition that in the double jeopardy context, illicit police conduct, outside the knowledge of the prosecutor, can and must be attributed to the prosecutor. We are simply not willing to take that first step. Thus, we agree with the district court's analysis that the conduct of the state law enforcement officer before the first grand jury, involving either intentional or negli-

gent misrepresentations, should not, in this case, be attributed to the prosecutor where that officer's misconduct was beyond the prosecutor's knowledge and control. *See Clauser v. Shadid*, 563 F.Supp. 392, 394 (C.D.Ill.1983).[6]

### III.

We hold that the trial court's decision to terminate Clauser's first trial, due to the apparent defect in the indictment, was occasioned by "manifest necessity" and thus the trial court exercised sound discretion in taking such action. Furthermore, we decline to attribute the police misconduct to the prosecutor. We hold that the district court properly denied Clauser's petition for a writ of habeas corpus and that Clauser's subsequent reindictment, retrial, and conviction did not violate the Constitution's double jeopardy prohibition. AFFIRMED.

---

6. We note that there is nothing in the record to indicate that the prosecutor intended to "goad" Clauser into moving for a mistrial which would in turn require reversal under *Oregon v. Kennedy*, 456 U.S. 667, 102 S.Ct. 2083, 72 L.Ed.2d 416

(1982). As we stated above, the prosecutor engaged in no misconduct and the intentional or negligent wrongdoing of the police can neither be attributed nor imputed to the prosecutor.