(53 P.3d 1248)

No. 87,107

STATE OF KANSAS, *Appellant*, v. CLYDE A. WITTSELL, *Appellee*.

Opinion filed September 27, 2002.

*Boyd K. Isherwood*, assistant district attorney, *Nola Foulston*, district attorney, and *Carla J. Stovall*, attorney general, for appellant.

*Randall J. Price*, of Wichita, for appellee.

Before PIERRON, P.J., ELLIOTT, J., and PATRICK D. MCANANY, District Judge, assigned.

ELLIOTT, J.: In this fact-sensitive case, following a mistrial on a one-count complaint charging Clyde A. Wittsell with aggravated incest, the State appeals the trial court's order dismissing the complaint with prejudice, on double jeopardy grounds.

We affirm.

Our jurisdiction is pursuant to K.S.A. 2001 Supp. 22-3602(b)(1) (State's appeal from an order dismissing complaint).

### Relevant factual and procedural background

The lurid allegations leading to this prosecution are not relevant to the issue on appeal and need not be discussed.

During a second police interview, Wittsell was given a polygraph examination. Present were Wittsell, Detective Shackelford, a social worker, and Joe Rankin, a civilian employee who administered the test. Only Wittsell and Rankin were present during the actual administering of the exam. Detective Shackelford interviewed Wittsell both before and after the polygraph exam, neither of which was tape recorded.

Prior to trial, Wittsell filed a motion in limine, seeking to exclude any evidence he had taken and failed a polygraph exam. The State agreed not to introduce such evidence.

At trial, Detective Shackelford began to testify about the second police interview. Defense counsel objected, stating he would be unable to effectively cross-examine the detective without violating the order in limine. The trial court overruled the objection, stating it would be appropriate if what the detective asked defendant pretest and posttest were presented to the jury as one continuous interview. The trial court granted defendant a continuing objection to all evidence of the second interview.

Direct examination of Detective Shackelford continued, and she testified defendant made certain incriminating statements during

the second interview. During cross-examination, defense counsel handed the detective Rankin's notes to refresh her recollection of the second interview. After a series of questions, apparently based on the detective's refreshed recollection, the following occurred:

"[Prosecutor]: Your Honor, I'm confused if [the detective] was present for this part of the interview or if she's just reading what Mr. Rankin's notes are just for clarification for me and the jury. I guess my objection would be foundation at this point.

"The Court: Well, she testified earlier that Mr. Rankin was present as well as [the social worker], and she recognizes that to be his handwritten notes.

"[Detective Shackelford]: May I say something?

"The Court: No.

"Q. [Defense counsel]: You've heard these statements made by Mr. Wittsell, didn't you, Detective?

"A. [Detective Shackelford]: Part of what Mr. Wittsell told Joe Rankin was a discussion between the two of them prior to the polygraph, which I may not have been present for.

"[Defense counsel]: Objection, Your Honor.

"The Court: Just got a mistrial."

A hearing was then held to determine whether to proceed with retrial or whether a retrial was barred by double jeopardy. The State called to the stand Detective Shackelford who testified, "In my mind I was thinking, don't say polygraph . . . and that's the first thing that blurted out of my mouth . . . . It was not—definitely not on my part intentional."

The trial court remarked:

"If I rule that double jeopardy bars retrial, it is not based upon the conduct of [the prosecutor]. . . . There was nothing that the prosecutor did to goad the defendant to move for a mistrial. Quite frankly, I'm not sure whether he moved for the mistrial. He lodged an objection. I declared a mistrial. I'm willing to take the blame or the credit. It was probably on the Court's own motion I declared the mistrial. *I felt that the manner in which that came out was so absolutely prejudicial that there were no curing remarks that I could make to remove that out of the mind of the jury.* You mentioned polygraph, and it's, 'Well if he passed, then the police wouldn't have prosecuted so he must have flunked or was less than truthful because that's why we're here.' I mean, that's the only conclusion the jury could draw." (Emphasis added.)

After further arguments, the trial court made the following findings of fact and conclusions of law on the record:

1. The answer of Detective Shackelford using the word "polygraph" was so prejudicial there was no way to salvage a fair trial.

2. The mistrial was granted without consent of the defendant because the court declared the mistrial before hearing the grounds of defense counsel's objection.

3. Detective Shackelford, being the lead case investigator, had a vested interest in the outcome of the trial.

4. Detective Shackelford was very uncomfortable on cross-examination after being handed Rankin's notes.

5. Detective Shackelford should have known better than to mention the word "polygraph."

The trial court then concluded:

"And again, my take on it again was not that this was a rapid-fire drilling cross-examination, that it was a spontaneous statement. The transcript indicates that you [the prosecutor] objected and interrupted the cross—you objected as to foundation. *You also kind of tipped it.* You said, 'I'm confused if she was present for this part of the interview or if she's just reading what Mr. Rankin's notes are just for clarification for me and the jury. I guess my objection would be foundation at this point.'

"My response was, 'Well, she testified earlier that Mr. Rankin was present as well as [the SRS case worker], and she recognizes that to be his handwritten notes.' Then the witness [Detective Shackelford] says, 'Your Honor, may I say something?' And I said, 'No.' And the next question, 'You've heard these statements made by Mr. Wittsell, didn't you, Detective?' *She could have said, 'No,' or 'I wasn't present for part of the interview,' but she chose to say, 'Part of what Mr. Wittsell told Joe Rankin was a discussion between the two of them prior to the polygraph, which I may not have been present for.'* Now, that is a long, deliberate answer. That is not some spontaneous quick-fire response in the heat of cross-examination.

"It's my opinion that Detective Shackelford, after asking the Court—to address the Court and being denied that opportunity, *wanted to terminate the cross-examination.* That's my take, despite her testimony here today. . . . *It's not a citizen witness. It is the case detective. And to that extent, the case detective is so connected with the prosecution of the case that I'm going to make a finding that as an agent of the prosecutor,* that is the goading of the defendant into a mistrial. That warrants the invocation of the double jeopardy clause of the Constitution. I'm dismissing the case with prejudice." (Emphasis added.)

## Analysis

The trial court made findings of fact and conclusions of law; therefore, we must first determine whether the trial court's find-

ings of fact are supported by substantial competent evidence, and, second, we must determine whether the factual findings are sufficient to support the trial court's conclusions of law. This second question is one of law and our review is unlimited. *Miller v. State*, 28 Kan. App. 2d 39, 43, 13 P.3d 13 (2001).

The trial court resolves factual conflicts because it is in a position to assess the credibility of witnesses. It did so here by rejecting Shackelford's testimony she did not intentionally inject "polygraph" into the trial. We cannot and will not assess witness credibility in the same manner as the trial court, see *State v. Kriegh*, 23 Kan. App. 2d 935, 938, 937 P.2d 453 (1997), and we are satisfied substantial competent evidence supports its factual findings on this issue. See *State v. Alexander*, 268 Kan. 610, 619, 1 P.3d 875 (2000).

We also hold the trial court did not err in finding the mistrial was granted without the consent of defendant. Simply put, the trial court granted the mistrial on its own motion without giving defense counsel the opportunity to state his grounds for objection. See *United States v. Jorn*, 400 U.S. 470, 487, 27 L. Ed. 2d 543, 91 S. Ct. 547 (1971); *Gori v. United States*, 367 U.S. 364, 365 n.6, 6 L. Ed. 2d 901, 81 S. Ct. 1523 (1961); *United States ex rel. Clauser v. McCevers*, 731 F.2d 423, 426 (7th Cir. 1984).

As a result, when a mistrial is granted without the consent of the defendant, there must have been a "manifest necessity" for the mistrial in order for a retrial to be permissible under double jeopardy concepts. *State v. Johnson*, 261 Kan. 496, 500, 932 P.2d 380 (1997); see *Arizona v. Washington*, 434 U.S. 497, 505, 54 L. Ed. 2d 717, 98 S. Ct. 824 (1978).

In the present case, defendant and the State agree the trial court, under the test announced above, properly declared a mistrial. We need not address this question further.

But for the manifest necessity doctrine to apply to allow retrial, the fault for the mistrial cannot lie at the feet of the prosecution or the judge. *Johnson*, 261 Kan. at 504. There simply can be no "manifest necessity" for prosecutorial or judicial misconduct.

In the present case, the trial court found, as a matter of fact, Detective Shackelford was "so connected with the prosecution of the case that [it made] a finding that *as an agent of the prosecutor,*

that is the goading of the defendant into a mistrial." (Emphasis added.) The trial court found the detective to be an agent of the State/prosecution. This is a finding of fact to which we give the trial court great deference. See *Kriegh*, 23 Kan. App. 2d at 938.

So far as we can determine, whether police misconduct precipitating a mistrial should be imputed to a prosecutor is a question of first impression in this state. And the only published opinion we have found addressing this issue is *United States ex rel. Clauser v. McCevers*, 731 F.2d 423. That case involved a *grand jury* proceeding where the prosecutor was seeking an indictment rather than a conviction. See 731 F.2d at 431. Accordingly, this case is of little help in resolving the present appeal.

Here, the trial court made a finding of fact that Detective Shackelford was an agent of the State. That finding is supported by adequate, though conflicting, evidence. The trial court understood the detective's personal, vested interest in the outcome of the case and her pride in obtaining a conviction. She conducted the investigation, interviewed witnesses, marshaled the evidence, and presented her case to the prosecutor.

Further, the trial court found Detective Shackelford, as the lead case detective, was uncomfortable with cross-examination and wished to terminate it and found factually she intentionally violated the order in limine and caused the mistrial.

In the context of an allegation the State violated *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963), our Supreme Court held the mere fact a prosecutor may not have had actual knowledge of evidence in the possession of law enforcement officials does not prevent imputation of that knowledge to the prosecutor in the interest of justice. *State v. Walker*, 221 Kan. 381, 383, 559 P.2d 381 (1977); see *Kyles v. Whitley*, 514 U.S. 419, 437, 131 L. Ed. 2d 490, 115 S. Ct. 1555 (1995).

The reasoning of those cases applies to the present case. To allow a retrial would have the unfortunate effect of providing a mechanism whereby the State could get a second chance at the defendant when the first trial starts to "go bad" for the State or its witnesses.

Additionally, it would be fundamentally unfair to subject defendant to a second trial when the factually found intentional con-

duct of the lead investigator and one of the State's primary witnesses sabotages the proceedings. After all, the Double Jeopardy Clause protects a defendant against governmental actions intended to provoke a mistrial. See *United States v. Dinitz*, 424 U.S. 600, 611, 47 L. Ed. 2d 267, 96 S. Ct. 1075 (1976).

At oral argument, the State argued the mistrial was the fault of defense counsel, who violated the order in limine by handing Detective Shackelford Joe Rankin's notes. The State argued the order in limine prohibited the use of Rankin's notes during trial.

We have searched the record and cannot find support for the claim. We can find no motion in limine and no written order in limine in the record. All we have are some vague comments made during a pretrial hearing. Even the State's brief on appeal merely declares "[t]he State agreed not to introduced [*sic*] evidence regarding the fact the defendant had taken a polygraph test."

We can find nothing in the record to indicate the order in limine went so far as to bar the use of Rankin's notes taken after the polygraph test was completed. The State has the burden to designate a record sufficient to establish the claimed error. *State v. Creamer* 26 Kan. App. 2d 914, 916, 996 P.2d 339 (2000).

The trial court properly found, under the facts of this case, that Detective Shackelford was an agent of the State and that her misconduct precludes retrial. See *Gilliam v. Foster*, 75 F.3d 881, 907 (4th Cir. 1996).

Affirmed.