No. 87,107

STATE OF KANSAS, *Appellant*, v. CLYDE A. WITTSELL, *Appellee*.

66 P.3d 831

Review of the judgment of the Court of Appeals in 30 Kan. App. 2d 1083, 53 P.3d 1248 (2002).

Opinion filed April 18, 2003.

*Boyd K. Isherwood*, assistant district attorney, argued the cause, and *Nola Foulston*, district attorney, and *Carla Stovall*, attorney general, were with him on the briefs for appellant.

*Randall J. Price*, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ALLEGRUCCI, J.: During the trial of Clyde Wittsell on one count of aggravated incest, a State's witness violated an order in limine by stating that there had been a polygraph examination. The district court made an immediate sua sponte declaration of mistrial. Im-

puting the introduction of improper evidence to the prosecution, the district court denied retrial and dismissed the complaint on double jeopardy grounds. The State appealed, and the Court of Appeals affirmed. *State v. Wittsell*, 30 Kan. App. 2d 1083, 53 P.3d 1248 (2002).

The sole issue is whether double jeopardy bars a retrial where the State's witness' violation of an order in limine precipitated a mistrial.

A polygraph examination of Wittsell was administered by Joe Rankin. In response to Wittsell's motion in limine, the prosecuting attorney agreed "to keep the issue of polygraph completely out of the trial."

Administration of the polygraph examination and what happened at trial are described as follows in the opinion of the Court of Appeals:

"During a second police interview, Wittsell was given a polygraph examination. Present were Wittsell, Detective Shackelford, a social worker, and Joe Rankin, a civilian employee who administered the test. Only Wittsell and Rankin were present during the actual administering of the exam. Detective Shackelford interviewed Wittsell both before and after the polygraph exam, neither of which was tape recorded.

"Prior to trial, Wittsell filed a motion in limine, seeking to exclude any evidence he had taken and failed a polygraph exam. The State agreed not to introduce such evidence.

"At trial, Detective Shackelford began to testify about the second police interview. Defense counsel objected, stating he would be unable to effectively cross-examine the detective without violating the order in limine. The trial court overruled the objection, stating it would be appropriate if what the detective asked defendant pretest and posttest were presented to the jury as one continuous interview. The trial court granted defendant a continuing objection to all evidence of the second interview.

"Direct examination of Detective Shackelford continued, and she testified defendant made certain incriminating statements during the second interview. During cross-examination, defense counsel handed the detective Rankin's notes to refresh her recollection of the second interview. After a series of questions, apparently based on the detective's refreshed recollection, the following occurred:

" '[Prosecutor]: Your Honor, I'm confused if [the detective] was present for this part of the interview or if she's just reading what Mr. Rankin's notes are just for clarification for me and the jury. I guess my objection would be foundation at this point.

" 'The Court: Well, she testified earlier that Mr. Rankin was present as well as [the social worker], and she recognizes that to be his handwritten notes.

" '[Detective Shackelford]: May I say something?

" 'The Court: No.

" 'Q. [Defense counsel]: You've heard these statements made by Mr. Wittsell, didn't you, Detective?

" 'A. [Detective Shackelford]: Part of what Mr. Wittsell told Joe Rankin was a discussion between the two of them prior to the polygraph, which I may not have been present for.

" '[Defense counsel]: Objection, Your Honor.

" 'The Court: Just got a mistrial.' " 30 Kan. App. 2d at 1084-85.

Following the mistrial, the State filed a motion for a new jury trial setting. The trial court conducted a hearing on the motion "to determine whether to proceed with retrial or whether a retrial was barred by double jeopardy." 30 Kan. App. 2d at 1085.

The State called to the stand Detective Shackelford who testified, " 'In my mind I was thinking, don't say polygraph . . . and that's the first thing that blurted out of my mouth. . . . It was not—definitely not on my part intentional.' " 30 Kan. App. 2d at 1085.

The trial court remarked:

" 'If I rule that double jeopardy bars retrial, it is not based upon the conduct of [the prosecutor]. . . . There was nothing that the prosecutor did to goad the defendant to move for a mistrial. Quite frankly, I'm not sure whether he moved for the mistrial. He lodged an objection. I declared a mistrial. I'm willing to take the blame or the credit. It was probably on the Court's own motion I declared the mistrial. I felt that the manner in which that came out was so absolutely prejudicial that there were no curing remarks that I could make to remove that out of the mind of the jury. You mentioned polygraph, and it's, "Well if he passed, then the police wouldn't have prosecuted so he must have flunked or was less than truthful because that's why we're here." I mean, that's the only conclusion the jury could draw.' " 30 Kan. App. 2d at 1085.

The trial court noted that Detective Shackelford, as the lead case investigator, had a strong interest in the outcome of the trial. The trial court found that Shackelford was uncomfortable during the cross-examination.

As stated in the Court of Appeals' opinion, the trial court then concluded:

" 'And again, my take on it again was not that this was a rapid-fire drilling cross-examination, that it was a spontaneous statement. The transcript indicates

that you [the prosecutor] objected and interrupted the cross—you objected as to foundation. You also kind of tipped it. You said, "I'm confused if she was present for this part of the interview or if she's just reading what Mr. Rankin's notes are just for clarification for me and the jury. I guess my objection would be foundation at this point."

" 'My response was, "Well, she testified earlier that Mr. Rankin was present as well as [the SRS case worker], and she recognizes that to be his handwritten notes." Then the witness [Detective Shackelford] says, "Your Honor, may I say something?" And I said, "No." And the next question, "You've heard these statements made by Mr. Wittsell, didn't you, Detective?" She could have said, "No," or "I wasn't present for part of the interview," but she chose to say, "Part of what Mr. Wittsell told Joe Rankin was a discussion between the two of them prior to the polygraph, which I may not have been present for." Now, that is a long, deliberate answer. That is not some spontaneous quick-fire response in the heat of cross-examination.

" 'It's my opinion that Detective Shackelford, after asking the Court—to address the Court and being denied that opportunity, wanted to terminate the cross-examination. That's my take, despite her testimony here today. . . . It's not a citizen witness. It is the case detective. And to that extent, the case detective is so connected with the prosecution of the case that I'm going to make a finding that as an agent of the prosecutor, that is the goading of the defendant into a mistrial. That warrants the invocation of the double jeopardy clause of the Constitution. I'm dismissing the case with prejudice.' " 30 Kan. App. 2d at 1086.

The Court of Appeals affirmed the trial court's decision, agreeing with the trial court's finding under the facts of this case, that Shackelford was an agent of the State and that her misconduct precludes retrial. 30 Kan. App. 2d at 1089. This court granted the State's petition for review on the question whether the witness' introduction of improper evidence should have been attributed to the prosecution for the purpose of double jeopardy analysis.

The Fifth Amendment to the United States Constitution provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb." The Double Jeopardy Clause is applicable to the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 794, 23 L. Ed. 2d 707, 89 S. Ct. 2056 (1969).

In *In re C.M.J.*, 259 Kan. 854, 857, 915 P.2d 62 (1996), this court discussed double jeopardy, stating:

"The protection against double jeopardy has its source in both the United States and Kansas Constitutions: ·

" 'The Fifth Amendment Double Jeopardy Clause of the United States Constitution states: "[N]or shall any person be subject for the same offence to be twice put in jeopardy of life or limb." The double jeopardy guaranty is enforceable against the states through the Fourteenth Amendment. *North Carolina v. Pearce*, 395 U.S. 711, 23 L. Ed. 2d 656, 89 S. Ct. 2072 (1969). Kansas also enforces an analogous double jeopardy clause in Section 10 of the Kansas Constitution Bill of Rights. It states: "No person shall . . . be twice put in jeopardy for the same offense." The double jeopardy protection guaranteed in the Kansas Constitution Bill of Rights is equivalent to the protection guaranteed in the United States Constitution. See *State v. Cady*, 254 Kan. 393, 396-97, 867 P.2d 270 (1994).' *Mertz*, 258 Kan. at 749.

"In *Mertz*, we summarized the scope of the double jeopardy protections:

" 'The Double Jeopardy Clause of the United States Constitution provides three different types of protection for a person charged with a crime. Double jeopardy protection shields an accused from: (1) a second prosecution for the same offense after acquittal, (2) a second prosecution for the same offense after conviction, and (3) multiple punishments for the same offense.' 258 Kan. 745, Syl. ¶ 3."

Because the Double Jeopardy Clause has been interpreted as a prohibition of being twice put in jeopardy, *United States v. Ball*, 163 U.S. 662, 669, 41 L. Ed. 300, 16 S. Ct. 1192 (1896), rather than of being twice punished for the same offense, a qualified mistrial exception to the prohibition has been developed to protect the public interest in the punishment of crime. There are differing standards for lifting the double jeopardy bar to a second trial depending on whether or not the proceedings were terminated over the defendant's objection.

The long-established test applied where the first trial was terminated over objection of the defendant is the "manifest necessity" standard. *Oregon v. Kennedy*, 456 U.S. 667, 672, 72 L. Ed. 2d 416, 102 S. Ct. 2083 (1982), citing *United States v. Perez*, 9 Wheat. 579, 580, 6 L. Ed. 165 (1824). Retrial is constitutionally permissible only where a high degree of necessity supports the mistrial. *Arizona v. Washington*, 434 U.S. 497, 505-07, 54 L. Ed. 2d 717, 98 S. Ct. 824 (1978).

Where a criminal defendant consents to a mistrial, double jeopardy is not implicated unless the prosecutorial conduct giving rise to the mistrial was intended to "goad" the defendant to move for a mistrial. *Kennedy*, 456 U.S. at 676. Retrial is constitutionally per-

missible only where the governmental conduct was not intended to provoke the defendant into seeking a mistrial.

The present case involves a sua sponte judicial declaration of mistrial in which the defendant acquiesced. Defense counsel objected when Shackelford mentioned the polygraph, and the trial court immediately declared the mistrial. At the hearing on double jeopardy, defense counsel expressed agreement with the trial court's action and indicated that he would have requested a mistrial had the trial judge not declared one:

"Obviously the next step would have been to move for a mistrial. You granted a mistrial sua sponte, and that's important in some of the later cases, Your Honor. But the bottom line is a reasonable person would agree with your determination that any facts elicited by the State after the violation of your order in limine would have made it impossible to proceed without substantial injustice to Mr. Wittsell, so it was surely within your discretion to order a mistrial."

One federal Court of Appeals deems a defendant's failure to object to a mistrial as consent to it: "If the defendant does not object, double jeopardy is not implicated unless the conduct giving rise to the mistrial was intended to provoke the defendant to move for a mistrial. . . . 456 U.S. at 679." *United States v. Ford,* 17 F. 3d 1100, 1102 (8th Cir. 1994). In circumstances where the defendant had no opportunity to object, *e.g. State v. Johnson,* 261 Kan. 496, 497, 932 P.2d 380 (1997), the federal court's practice would be too harsh. In the circumstances of the present case, however, where defendant concedes that he would have requested a mistrial if the trial judge had not declared one, his failure to object to the mistrial may reasonably be treated as consent. As another federal Court of Appeals stated: "Parties may give assent in many ways. If a judge should say: 'I think a mistrial would be a good idea, but think this over and let me know if you disagree', the defendant's silence would be assent." *United States v. Buljubasic,* 808 F.2d 1260, 1265-66 (7th Cir. 1987). Hence, where, as here, the trial was terminated with consent of the defendant, "the 'manifest necessity' standard has no place in the application of the Double Jeopardy Clause. [Citation omitted.]" *Kennedy,* 456 U.S. at 672. Here we apply the same standard as if Wittsell had moved for the mistrial,

that is whether the governmental conduct was intended to provoke the defendant into seeking a mistrial.

The trial court hedged its bets on the correct standard and applied both. Conforming his findings to the "manifest necessity" standard, the trial judge stated his belief that a high degree of necessity supported the mistrial:

"I felt that the manner in which [the reference to Wittsell's polygraph examination] came out was so absolutely prejudicial that there were no curing remarks that I could make to remove that out of the mind of the jury. You mentioned polygraph, and it's, well if he passed, then the police wouldn't have prosecuted so he must have flunked or was less than truthful because that's why we're here. I mean, that's the only conclusion the jury could draw."

The Court of Appeals rejected application of the manifest necessity standard in this case, but not because Wittsell acquiesced in the judicially declared mistrial. Citing *State v. Johnson*, 261 Kan. at 504, the Court of Appeals stated that "for the manifest necessity doctrine to apply to allow retrial, the fault for the mistrial cannot lie at the feet of the prosecution or the judge. [Citation omitted.] There simply can be no 'manifest necessity' for prosecutorial or judicial misconduct." *Wittsell*, 30 Kan. App. 2d at 1087. *Johnson* was a case in which defendant did not consent to the mistrial. There the court stated that "manifest necessity does not exist when prosecutorial or judicial overreaching has occurred." *Johnson*, 261 Kan. at 504. The rule stated by the Court of Appeals is inapt in the circumstances of the present case.

The trial court also applied the standard for consenting defendants—whether the governmental conduct was intended to provoke the defendant into seeking a mistrial. At the hearing on double jeopardy, Shackelford testified: "In my mind I was thinking, Don't say polygraph; don't say polygraph, and that's the first thing that blurted out of my mouth without even realizing that I had said it. It was not — definitely not on my part intentional. I've worked very hard on this case from the very inception of it, and I certainly did not want a mistrial." In spite of her denials, the trial judge believed that there was not only intention but also guile in Detective Shackelford's mentioning the polygraph examination:

"[M]y take on it again was not that this was a rapid-fire drilling cross-examination, that it was a spontaneous statement. The transcript indicates that you objected and interrupted the cross . . . .

"My response was, Well, she testified earlier that Mr. Rankin was present as well as Sarah Ferguson, and she recognizes that to be his handwritten notes. Then the witness says, Your Honor, may I say something? And I said, No. And the next question, You've heard these statements made by Mr. Wittsell, didn't you Detective? She could have said, No, or I wasn't present for part of the interview, but she chose to say, Part of what Mr. Wittsell told Joe Rankin was a discussion between the two of them prior to the polygraph, which I may not have been present for. Now, that is a long, deliberate answer. That is not some spontaneous quick-fire response in the heat of cross-examination."

In contrast to his view of the prosecution witness, the trial judge's assessment of the conduct of the prosecuting attorney was entirely positive: "And I'll state for the record right up front that if I rule that double jeopardy bars retrial, it is not based upon the conduct of Alice MacBeth [the prosecutor]. I'll make that very clear on the record. There was nothing that the prosecutor did to goad the defendant to move for a mistrial." Then, despite his expressly exonerating the prosecuting attorney of any misconduct, the trial judge imputed what he viewed as the witness' intentional violation of the order in limine to the prosecution. The trial court stated:

"It's my opinion that Detective Shackelford, after asking the Court — to address the Court and being denied that opportunity, wanted to terminate the cross-examination. That's my take, despite her testimony here today. She's the case detective. This isn't just a police officer that had an incidental contact with the case. It's not a citizen witness. It is the case detective. And to that extent, the case detective is so connected with the prosecution of the case that I'm going to make a finding that as an agent of the prosecutor, that is the goading of the defendant into a mistrial. That warrants the invocation of the double jeopardy clause of the Constitution. I'm dismissing the case with prejudice."

The Court of Appeals affirmed the trial court's imputing the misconduct of the witness to the prosecution. 30 Kan. App. 2d 1089. Here is the reasoning of the Court of Appeals:

"In the present case, the trial court found, as a matter of fact, Detective Shackelford was 'so connected with the prosecution of the case that [it made] a finding that *as an agent of the prosecutor*, that is the goading of the defendant into a mistrial.' (Emphasis added.) The trial court found the detective to be an agent of the State/prosecution. This is a finding of fact to which we give the trial court

great deference. See [*State v.* ] *Kriegh,* 23 Kan. App. 2d [935,] 938, 937 P.2d 453 [(1997)].

"So far as we can determine, whether police misconduct precipitating a mistrial should be imputed to a prosecutor is a question of first impression in this state. And the only published opinion we have found addressing this issue is *United States ex rel. Clauser v. McCevers,* 731 F.2d 423. That case involved a *grand jury* proceeding where the prosecutor was seeking an indictment rather than a conviction. See 731 F.2d at 431. Accordingly, this case is of little help in resolving the present appeal.

"Here, the trial court made a finding of fact that Detective Shackelford was an agent of the State. That finding is supported by adequate, though conflicting, evidence. The trial court understood the detective's personal, vested interest in the outcome of the case and her pride in obtaining a conviction. She conducted the investigation, interviewed witnesses, marshaled the evidence, and presented her case to the prosecutor.

"Further, the trial court found Detective Shackelford, as the lead case detective, was uncomfortable with cross-examination and wished to terminate it and found factually she intentionally violated the order in limine and caused the mistrial.

"In the context of an allegation the State violated *Brady v. Maryland,* 373 U.S. 83, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963), our Supreme Court held the mere fact a prosecutor may not have had actual knowledge of evidence in the possession of law enforcement officials does not prevent imputation of that knowledge to the prosecutor in the interest of justice. *State v. Walker,* 221 Kan. 381, 383, 559 P.2d 381 (1977); see *Kyles v. Whitley,* 514 U.S. 419, 437, 115 S. Ct. 1555, 131 L. Ed. 2d 490 (1995).

"The reasoning of those cases applies to the present case. To allow a retrial would have the unfortunate effect of providing a mechanism whereby the State could get a second chance at the defendant when the first trial starts to 'go bad' for the State or its witnesses.

"Additionally, it would be fundamentally unfair to subject defendant to a second trial when the factually found intentional conduct of the lead investigator and one of the State's primary witnesses sabotages the proceedings. After all, the Double Jeopardy Clause protects a defendant against governmental actions intended to provoke a mistrial. See *United States v. Dinitz,* 424 U.S. 600, 611, 47 L. Ed. 2d 267, 96 S. Ct. 1075 (1976).

. . . .

"The trial court properly found, under the facts of this case, that Detective Shackelford was an agent of the State and that her misconduct precludes retrial. See *Gilliam v. Foster,* 75 F.3d 881, 907 (4th Cir. 1996)." 30 Kan. App. 2d at 1087-89.

We agree that Detective Shackleford is an agent of the State, however, we disagree with the Court of Appeals' application of the

*Brady* rationale to impute her conduct to the prosecutor to preclude Wittsell's retrial.

The Court of Appeals did not consider *United States ex rel. Clauser v. McCevers*, 731 F.2d 423 (7th Cir. 1984), helpful because it involved a grand jury proceeding rather than a trial. 30 Kan. App. 2d at 1088. We disagree. Clauser's trial for delivery of a controlled substance was terminated by the trial judge when it came to light that law enforcement officers had misrepresented evidence to the grand jury that had indicted Clauser. The misconduct was "neither caused by the prosecutor nor within the scope of his knowledge." 731 F.2d at 424. Following his reindictment, Clauser unsuccessfully moved for dismissal of the charge on double jeopardy grounds. He was retried and convicted. His conviction was upheld on appeal. He filed a petition for a writ of habeas corpus, the writ was denied, and denial was affirmed. In affirming, the federal Court of Appeals discussed imputing the misconduct to the prosecutor:

"[T]he petitioner admits that the prosecutor engaged in no wrongdoing, 'there is no suggestion that the prosecutor himself was responsible,' however, he contends that the misconduct on the part of the police witnesses before the grand jury should be attributed to the prosecutor for purposes of our constitutional analysis. We decline to adopt his position. The petitioner cites a wealth of authority wherein police misconduct, outside the knowledge of the prosecutor, was deemed sufficient to overturn a defendant's *first* conviction. *See, e.g., Curran v. State of Delaware*, 259 F.2d 707, 713 (3d Cir. 1958); *Barbee v. Warden, Maryland Penitentiary*, 331 F.2d 842, 846 (4th Cir. 1964). These cases, however, do not address the issue of double jeopardy but rather are appeals from initial proceedings and convictions. The defendant does not cite any authority in support of the proposition that in the double jeopardy context, illicit police conduct, outside the knowledge of the prosecutor, can and must be attributed to the prosecutor. We are simply not willing to take that first step. Thus, we agree with the district court's analysis that the conduct of the state law enforcement officer before the first grand jury, involving either intentional or negligent misrepresentations, should not, in this case, be attributed to the prosecutor where that officer's misconduct was beyond the prosecutor's knowledge and control. *See Clauser v. Shadid*, 563 F. Supp. 392, 394 (C.D.Ill. 1983). [FN6]

FN6. We note that there is nothing in the record to indicate that the prosecutor intended to 'goad' Clauser into moving for a mistrial which would in turn require reversal under *Oregon v. Kennedy*, 456 U.S. 667, 102 S. Ct. 2083, 72 L. Ed. 2d 416 (1982). As we stated above, the prosecutor engaged in no misconduct and

the intentional or negligent wrongdoing of the police can neither be attributed nor imputed to the prosecutor." 731 F. 2d at 431.

Thus, the issue in *Clauser* was the same issue as that in the present case—whether police misconduct, which resulted in a mistrial, was to be imputed to the prosecution so as to bar reprosecution of the defendant. Whether the misconduct occurred during trial or a grand jury proceeding matters not for the double jeopardy analysis. We find the *Clauser* rationale persuasive in the context of the present case.

In *United States v. Cyphers*, 553 F.2d 1064, *cert. denied* 434 U.S. 843 (1977), a double jeopardy question arose when the first trial, a joint trial, was terminated when a government witness mentioned the codefendant's name while testifying to an incriminating admission made by Cyphers. Stating that it is within the discretion of a trial court to declare a mistrial "so that the ends of public justice will not be defeated by inadvertent errors," the federal Court of Appeals concluded that Cyphers' rights under the double jeopardy clause had not been violated. 553 F.2d at 1068. The appellate court further noted:

"FN1. We would have a different case, of course, if calculated prosecutorial misconduct necessitated the mistrial. Though the prudence of the Government's choice of trial tactics might now be second-guessed, the Government was entitled to try the defendants jointly and to attempt to resolve the *Bruton* problem by instructing its witness to redact his testimony. The witness' inadvertent failure to do so does not in our opinion, render the Government vicariously liable for the mistrial or constitute the sort of overreaching that alone would mandate dismissal of Cyphers' indictment on retrial. See *United States v. Di Silvio*, 520 F.2d 247, 250 (3d Cir. 1975): Note, *Mistrial and Double Jeopardy*, 49 N.Y.U.L. Rev. 937, 951 (1974)." 553 F.2d at 1068 n.1.

In *Ford*, 17 F. 3d at 1103, the Eighth Circuit Court of Appeals considered the issue of attributing misconduct of law enforcement officers to the prosecution. During Ford's trial on drug charges, a defense witness named Ruby Sledge was arrested in the federal building by local authorities in an apparent contravention of the informal policy governing such arrests. Sledge became extremely distraught and was determined not to be "in any condition to tes-

tify." 17 F.3d at 1102. Ford did not object when the district court declared a mistrial. On appeal, the court declined to

"address the issue of whether or not the improperly conducted arrest rises to the level of official misconduct on the part of the arresting officers because we have no reason to attribute those actions to the federal prosecutor in this case. While it is true that the federal prosecutor notified the local authorities that Sledge was appearing as a witness, there is absolutely nothing in the record to suggest that the prosecutor intended an improper arrest." 17 F.3d at 1103.

In *Spann v. State*, 557 So. 2d 530 (Miss. 1990), the Supreme Court of Mississippi rejected the defendant's contention that the conduct of a prosecution witness was attributable to the prosecution. Inell Dawson, the defendant's mother-in-law, was a witness for the State. "During the cross-examination of Mrs. Dawson, she was admonished first to stop answering defense counsel's questions with questions. Later, the trial judge removed the jury from the courtroom and further admonished Mrs. Dawson to the point of threatening her with contempt." 557 So. 2d at 531. After further disruption, including derogatory comments by defendant's wife about his credibility, a mistrial was declared. Spann opposed the State's attempt to retry him on the ground that the mistrial was the fault of prosecution witnesses whose conduct was imputable to the State. Although it was defendant's wife's conduct that " 'finally triggered a mistrial,' " the court recognized that the mother-in-law's conduct was at least a factor in the declaration of the mistrial. With regard to Spann's contention that her conduct ought to be imputed to the prosecution, the Mississippi Supreme Court stated that "the State did not elicit or provoke the questionable behavior. The problems occurred on cross-examination. There was no evidence of bad faith on the part of the State." 557 So. 2d at 532.

Likewise, in the present case, the State did not elicit or provoke Detective Shackelford's testimony about the polygraph examination. The problem occurred on cross-examination, and there was no evidence of bad faith on the part of the State. In fact, the trial court specifically found just the opposite.

In the present case, the Court of Appeals built its analysis on an analogy to the *Brady* rule. 30 Kan. App. 2d at 1088, citing *Brady v. Maryland*, 373 U.S. 83, 10 L. Ed. 2d 215, 83 S. Ct. 1194 (1963). In a

case that the parties argued as a *Brady* case, this court has applied the concept of constructive knowledge in holding that knowledge possessed by law enforcement officials may be imputed to a prosecutor. See *State v. Walker*, 221 Kan. 381, 383, 559 P.2d 381 (1997). The imputation of bad faith, however, is a different matter.

There is a substantial difference between attributing constructive knowledge in a *Brady* case and attributing bad faith in a double jeopardy case. The difference, at least in part, is that a *Brady* violation may arise because a prosecutor failed to satisfy his or her duty to learn of any favorable evidence known to others acting on the government's behalf in a case, irrespective of good or bad faith. *Kyles v. Whitley*, 514 U.S. 419, 437, 131 L. Ed. 2d 490, 115 S. Ct. 1555 (1995). A prosecutor's obligation with regard to the testimony of State's witnesses includes informing them of any subjects improper for testimony so that the witnesses may avoid violating an order in limine. Once a prosecutor fully and properly advises a witness of an order in limine, as the trial court found in the present case, his or her duty is properly discharged. A State witness' intentionally introducing improper evidence is acting on his or her own, outside the scope of the prosecutor's duty.

In a case involving a failure to disclose exculpatory evidence in violation of *Brady*, a federal Court of Appeals draws a distinction between imputing knowledge and imputing bad faith. See *United States ex rel. Smith v. Fairman*, 769 F.2d 386 (7th Cir. 1985). In that case, an officer's firearms worksheet that was prepared the day after petitioner allegedly fired at police officers showed that the gun he was supposed to have used was inoperable. The appellate court stated: "The prosecutor's ignorance of the existence of Officer Smith's worksheet does not justify the State's failure to produce it, since *Brady* provides that the good faith or bad faith of the prosecution is irrelevant to the due process inquiry. [Citation omitted.]" 769 F.2d at 391. In a footnote, the court factually distinguished *United States ex rel. Clauser v. McCevers*, 731 F.2d 423, where police misrepresentations before the grand jury were not ascribed to the prosecution for double jeopardy analysis. 769 F.2d at 391 n.2. The defendant cites no case, nor are we aware of one,

in which this court imputed bad faith to one person that was demonstrated in the conduct of another.

We reverse the Court of Appeals' decision affirming the trial court, reverse the district court, and remand for retrial.

ABBOTT and GERNON, JJ., not participating.

LARSON, S.J., and WAHL, S.J., assigned■