NOT DESIGNATED FOR PUBLICATION

No. 118,091

IN THE COURT OF APPEALS OF THE STATE OF KANSAS

STATE OF KANSAS,
*Appellee*,

v.

GRADY ALLEN KORNELSON,
*Appellant*.

MEMORANDUM OPINION

Appeal from Reno District Court; TRISH ROSE, judge. Opinion filed March 15, 2019. Affirmed.

*Kai Tate Mann*, of Kansas Appellate Defender Office, for appellant.

*Natasha Esau*, assistant district attorney, *Keith Schroeder*, district attorney, and *Derek Schmidt*, attorney general, for appellee.

Before GARDNER, P.J., HILL and SCHROEDER, JJ.

PER CURIAM:  Grady Kornelson appeals his convictions for driving under the influence (DUI) and illegal transportation of liquor. Kornelson argues that his retrial following a mistrial violated his double jeopardy rights. Kornelson also argues that the burden of proof instruction used during his second trial was clearly erroneous because it discouraged the jury from exercising its power of nullification. For the reasons set forth below, we affirm.

*Factual and procedural background*

In September 2015, Sherriff's Deputy Christopher Shields conducted a traffic stop after seeing Kornelson cross the centerline of a two-lane highway. Shields gave Kornelson a field sobriety test. Kornelson was arrested and was given a breath test which showed his blood alcohol content was .121. Officers found a full can of cool beer in the console of his car. The State charged Kornelson with several counts related to alcohol.

His case first went to trial in October 2016. There, the jury saw footage of the stop, heard testimony from the law enforcement officers involved, and reviewed the breath test results. During the proceedings, Kornelson pled no contest to the charge of operating a vehicle without an ignition interlock device. The verdict form states three charges:  (1) driving under the influence with a breath alcohol level above .08 within three hours of operation; (2) driving under the influence to a degree of being incapable of safely operating a vehicle; and (3) illegal transportation of liquor.

After the evidence was presented, the district court spoke directly to the jury:

> "We're ready for instructions and closing argument. And I need to ask the members of the jury or tell you that this phase will probably take us about 45 minutes, and it's now almost 4:30. At that point it would be time for you to deliberate. My first question is, does anyone have a problem with staying roughly until 5:15? And then my question or actually a statement is from then you can decide whether you wish to deliberate or not, based on your discussions. So does anyone have a problem with about 45 more minutes today?"

One juror responded that she did have a conflict but she made a phone call and resolved the conflict before closing arguments. The district court then told the jury to begin deliberating and stated, "I'll let you tell me how long you wish to stay today."

After deliberating for about 1 hour and 15 minutes, the jury notified the court reporter it was "hung" on counts 1 and 2. The jury reentered the courtroom and the district judge inquired: "[M]y court reporter, Ms. Potter, has advised me that you have advised her that you feel like you cannot reach a unanimous verdict. . . . Is that an accurate statement?" The foreperson replied by stating, "Yes, ma'am, at this point in it." Then, the following exchange occurred:

"THE COURT: It is 6:30 at night and everyone is probably kind of weary and you could come back in the morning and what I would do is have you convene at 8:30 a.m. and as soon as I would be advised you're all present, I would give the go ahead to begin deliberating again. I will ask you, Mr. M[.], do you think that that might be a fruitful course of action?

"JUROR: Well, on one of the counts—

"THE COURT: Okay. Now—

"JUROR: That's a yes or no?

"THE COURT: That's yes or no.

"JUROR: Um, we will have access to all of the information we had today again; is that correct, the evidence?

"THE COURT: Yes.

"JUROR: Okay. I guess I would have to ask my team whether or not they felt it would be worthwhile. I don't have that much say over that, and I don't want to say something that might be incorrect. That's all. Does that make sense?

"THE COURT: Would it create a hardship on any of you and if you will just show me by hands, if I required you to come back in the morning? Ms. A[.], it would?

"JUROR: I'm down one employee and I'm the only other person so this, yes, it is going to be a hardship.

"THE COURT: Okay. Alright. Well, you have certainly given it your all. It's a long day to be here from nine until 6:30. I'm going to declare what we call a hung jury. That sounds kind of harsh. We're not going to do anything to you but I do appreciate your service. I realize that is for some of you perhaps a frustrating outcome, and but it is a legitimate outcome and sometimes it happens. So I believe you have been given the work releases that you need. Those of you, Ms. Potter has them. You are now released from the

3

prohibition about talking because the case is done. So if you want to talk to anyone about the case, you are free to do that. And you're also free to go with my thanks."

After the jury was released, the jury foreperson signed and handed in the verdict form stating that the jury had found Kornelson not guilty of count two—the alternative DUI charge for operating a vehicle while under the influence of alcohol to a degree that rendered Kornelson incapable of safely driving a vehicle. But the verdict form also included a note, apparently from the bailiff, stating:

> "The jurors indicated in a note to the Court they were hung on Count One and Two. Judge Rose in open court, on the record, declared a hung jury. Following the close of the case Foreperson M[.] returned to the courtroom and signed the verdict in error."

At Kornelson's second trial, the jury found him guilty on all three counts. Kornelson timely appeals.

*Did the second trial violate Kornelson's rights against double jeopardy?*

Kornelson first argues that trying him a second time violated his rights against double jeopardy. He contends the district court lacked the manifest necessity to declare a mistrial of his first trial. Kornelson argues that the district court abused its discretion in declaring a mistrial because its decision was based on a mistaken belief that the jury was hung or deadlocked. Kornelson alternatively argues that the district court improperly relied on considerations outside of the fact that the jury was deadlocked. The State responds that the jury's failure to agree on a verdict constitutes manifest necessity. Relying on a different standard than manifest necessity, we affirm Kornelson's conviction.

The Fifth Amendment to the United States Constitution prohibits that any individual "be subject for the same offence to be twice put in jeopardy of life or limb."

4

U.S. Const. amend. V. Similarly, Section 10 of the Kansas Constitution Bill of Rights states: "No person shall . . . be twice put in jeopardy for the same offense." The guarantee against double jeopardy protects defendants against multiple prosecutions and also "affords a criminal defendant a 'valued right to have his trial completed by a particular tribunal.' [Citation omitted.]" *State v. Miller*, 293 Kan. 535, 544-45, 264 P.3d 461 (2011).

Whether a double jeopardy violation occurs under either the United States or Kansas Constitutions is a question of law subject to our unlimited review. *State v. Lehman*, 308 Kan. 1089, 1094, 427 P.3d 840 (2018). We will not disturb a district court's decision to declare a mistrial absent a showing of abuse of discretion. *State v. Graham*, 277 Kan. 121, 132, 83 P.3d 143 (2004). A district court abuses its discretion when no reasonable person would take the view adopted by the court or the court based its decision on an error of law or fact. *State v. Marshall*, 303 Kan. 438, 445, 362 P.3d 587 (2015).

Kornelson did not object to the district court's declaration of a mistrial; thus, he raises the issue for the first time on appeal. Generally, issues not raised before the district court cannot be raised on appeal, including those based on constitutional grounds. See *State v. Daniel*, 307 Kan. 428, 430, 410 P.3d 877 (2018); *State v. Kelly*, 298 Kan. 965, 971, 318 P.3d 987 (2014). But the general rule is subject to two exceptions that Kornelson invokes here: (1) The newly asserted theory involves only a question of law arising on proved or admitted facts and is finally determinative of the case; and (2) consideration of the theory is necessary to serve the ends of justice or to prevent denial of fundamental rights. *State v. Phillips*, 299 Kan. 479, 493, 325 P.3d 1095 (2014). Kornelson has adequately explained why this issue not raised below should be considered for the first time on appeal, meeting the requirements of Supreme Court Rule 6.02(a)(5) (2019 Kan. S. Ct. R. 34). We thus reach the merits of his claim.

"'There are differing standards for lifting the double jeopardy bar to a second trial depending on whether or not the proceedings were terminated over the defendant's objection.' *State v. Wittsell*, 275 Kan. 442, 446, 66 P.3d 831 (2003)." *Fulton v. State*, No. 118,253, 2018 WL 1769385, at *2 (Kan. App.) (unpublished opinion), *rev denied* 308 Kan. 1594 (2018). When a defendant's first trial is terminated over the defendant's objection, we review the district court's declaration of a mistrial under a "manifest necessity" standard. This is the standard the parties rely on here. Under these circumstances, "'[r]etrial is constitutionally permissible only where a high degree of necessity supports the mistrial.'" *Graham*, 277 Kan. at 133 (quoting *State v. Wittsell*, 275 Kan. 442, 446, 66 P.3d 831 [2003]). But Kornelson did not object to the court's declaration of a mistrial.

Conversely, when a criminal defendant consents to a mistrial, double jeopardy is not implicated unless the prosecutorial conduct giving rise to the mistrial was intended to "goad" the defendant into moving for a mistrial. *State v. Wittsell*, 275 Kan. 442, 446, 66 P.3d 831 (2003) (citing *Oregon v. Kennedy*, 456 U.S. 667, 676, 102 S. Ct. 2083, 72 L. Ed. 2d 416 [1982]). Then, "[r]etrial is constitutionally permissible only where the governmental conduct was not intended to provoke the defendant into seeking a mistrial." *Wittsell*, 275 Kan. at 446-447. But Kornelson did not expressly consent to the mistrial here.

So which standard applies when the defendant neither objected to nor expressly consented to the court's declaration of a mistrial? Our Supreme Court has answered this question adversely to Kornelson:

> "Since [the defendant] did not object to the granting of a mistrial, the 'manifest necessity' standard is not applicable. The correct standard, where the defendant does not object, is the same standard as if [the defendant] had consented to the mistrial." *Graham*, 277 Kan. at 133.

6

Because Kornelson did not object to the termination of the first trial, we review the declaration of a mistrial here as if he had consented to the mistrial, using the "goading" standard. See, e.g., *Fulton*, 2018 WL 1769385 at *2-4.

Kornelson makes no attempt to apply this standard, arguing only that the district court lacked manifest necessity to call a mistrial. Because Kornelson failed to brief the issue regarding prosecutorial conduct, we deem that issue waived or abandoned. See *State v. Arnett*, 307 Kan. 648, 650, 413 P.3d 787 (2018). No "goading" has been shown.

Instead of trying to show goading, Kornelson argues that the "goading" standard should apply only in limited situations not present here: when a defendant argues that prosecutorial error occurred, when the mistrial was requested or consented to by the defendant, or, as in *Wittsell*, "where a defendant concedes that he would have requested a mistrial if the trial judge had not declared one." 275 Kan. at 447-48. Kornelson further asserts that our Supreme Court incorrectly extended the *Wittsell* standard in *Graham*, citing *Renico v. Lett*, 559 U.S. 766, 773, 130 S. Ct. 1855, 176 L. Ed. 2d 678 (2010) (applying the manifest necessity standard in reviewing a mistrial due to a hung jury).

But we are not at liberty to deviate from our Kansas Supreme Court precedent made clear in *Graham*. There, when the district court sua sponte declared a mistrial and Graham did not object, we applied the manifest necessity standard but our Supreme Court rejected that analysis, holding that the goading standard applied instead. *State v. Graham*, No. 86,899, 2003 WL 21521298 (Kan. App. 2003) (unpublished opinion), *aff'd* 277 Kan. at 133-34. So even if Kornelson has a reasonable argument that the standard should be different, we are duty bound to follow Kansas Supreme Court precedent, absent some indication the Supreme Court is departing from its previous position. *State v. Meyer*, 51 Kan. App. 2d 1066, 1072, 360 P.3d 467 (2015). We find no indication of a departure.

7

Accordingly, Kornelson has failed to show a double jeopardy violation under the goading standard.

*Did the district court err in instructing the jury?*

Kornelson next argues that the district court hindered the jury's right to nullification by giving the Pattern Instructions for Kansas (PIK) instruction on the burden of proof. This instruction informed the jury that if it had no reasonable doubt as to the truth of each of the claims required to be proved by the State, it should find the defendant guilty. Kornelson argues that the district court erred in using the word "should" instead of "may."

But Kornelson did not object to this instruction at trial. As a result, we apply a clearly erroneous standard of review. See K.S.A. 2017 Supp. 22-3414(3) ("No party may assign as error the giving or failure to give an instruction . . . unless the party objects thereto before the jury retires to consider its verdict . . . unless the instruction or the failure to give an instruction is clearly erroneous."); *State v. Pfannestiel*, 302 Kan. 747, 752-53, 357 P.3d 877 (2015). Under this standard, reversal is required only if an instruction error occurred and we are firmly convinced that the jury would have reached a different verdict if the error had not occurred. Kornelson, as the party claiming clear error, has the burden to demonstrate that prejudice. See *State v. McLinn*, 307 Kan. 307, 318, 409 P.3d 1 (2018).

Using an unlimited review of the entire record, we first determine whether the instruction was legally and factually appropriate. Kornelson's argues that the instruction was not legally appropriate because it precluded the possibility of jury nullification. We disagree.

At Kornelson's second trial, the district court gave the standard PIK instruction, PIK Crim. 4th 51.010, which stated:

"The State has the burden to prove Grady Kornelson is guilty. Grady Kornelson is not required to prove he is not guilty. You must presume that he is not guilty unless you are convinced from the evidence that he is guilty.

"The test you must use in determining whether Grady Kornelson is guilty or not guilty is this: If you have a reasonable doubt as to the truth of any of the claims required to be proved by the State, you must find Grady Kornelson not guilty. If you have no reasonable doubt as to the truth of each of the claims required to be proved by the State, you *should* find Grady Kornelson guilty." (Emphasis added.)

Our Supreme Court "strongly recommend[s] the use of PIK instructions, which knowledgeable committees develop to bring accuracy, clarity, and uniformity to instructions." *State v. Butler*, 307 Kan. 831, 847, 416 P.3d 116 (2018). "Absent a particular need under the facts of a case to alter . . . PIK instructions, they should be followed. *State v. Acevedo,* 49 Kan. App. 2d 655, 663, 315 P.3d 261 (2013), *rev. denied* 300 Kan. 1104 (2014)." *State v. Allen*, 52 Kan. App. 2d 729, 734, 372 P.3d 432 (2016), *rev. denied* 306 Kan. 1320 (2017). The district court followed the applicable PIK instruction here.

Jury nullification is defined as:

"'A jury's knowing and deliberate rejection of the evidence or refusal to apply the law either because the jury wants to send a message about some social issue that is larger than the case itself or because the result dictated by law is contrary to the jury's sense of justice, morality, or fairness.' [Citation omitted.]" *Silvers v. State*, 38 Kan. App. 2d 886, 888, 173 P.3d 1167 (2008).

Our Supreme Court has held that certain burden of proof instructions erroneously prohibited juries from using their power of nullification. *State v. Smith-Parker*, 301 Kan.

9

132, 163, 340 P.3d 485 (2014), held that the district court erred in instructing the jury that "'[i]f you do not have a reasonable doubt from all the evidence that the State has proven murder in the first degree on either or both theories, then you will enter a verdict of guilty.'" Our Supreme Court found the instruction to be clearly erroneous because it was too close to directing a verdict for the State and essentially forbade the jury from exercising its power of nullification. The court overruled its previous decision in *State v. Lovelace*, 227 Kan. 348, 354, 607 P.2d 49 (1980), which had held that use of the word "must" was acceptable because the words "'should' and 'must' could be used interchangeably in criminal instructions." *Smith-Parker*, 301 Kan. at 164.

More recently, our Supreme Court decided *State v. Robinson*, 303 Kan. 11, 363 P.3d 875 (2015), *disapproved of on other grounds by State v. Cheever*, 306 Kan. 760, 402 P.3d 1126, *cert. denied* 138 S. Ct. 560 (2017). There, the Supreme Court disagreed that the use of the word "shall" improperly forbade the jury from exercising its nullification power. The instruction stated:

> "'As to each count, if you find unanimously beyond a reasonable doubt that the aggravating circumstance claimed by the State exists and that it outweighs mitigating circumstances believed to exist, then you *shall* impose a sentence of death and sign the appropriate verdict form." *Robinson*, 303 Kan. at 333.

The Supreme Court found this instruction was properly given:

> "[T[he use of the term 'shall' . . . tracks the statutory language. . . . [It] also provides guidance for the jury to provide an alternative verdict for a life sentence. As such, we find the instruction is unlike the situation in *Smith-Parker* and does not 'fly too close to the sun of directing a verdict for the State.'" *Robinson*, 303 Kan. at 334.

This court has consistently held that "unlike the words must, shall, and will, the word should in jury instructions does not express a mandatory, unyielding duty or

10

obligation; instead, it merely denotes the proper course of action and encourages following the advised path." *State v. Hastings,* No. 122,222, 2016 WL 852857, at *4 (Kan. App. 2016) (unpublished opinion); see *State v. Allen*, 52 Kan. App. 2d 729, Syl. ¶ 5, 372 P.3d 432 (2016), *rev. denied* 306 Kan. 1320 (2017); *State v. Patrick*, No. 116,660, 2018 WL 4373053, at *10 (Kan. App. 2018) (unpublished opinion), *petition for rev. filed* October 15, 2018. We find these decisions to be well reasoned.

Use of the word "should" in the standard PIK instruction for the burden of proof is proper and does not prohibit jury nullification powers. Thus, the burden of proof instruction given in Kornelson's second trial was not clearly erroneous.

Affirmed.