No. 75,611

STATE OF KANSAS, *Appellant*, v. DANIEL P. JOHNSON, *Appellee*.

932 P.2d 380

Opinion filed January 24, 1997.

*Alan D. Hughes*, assistant county attorney, argued the cause and was on the brief for appellant.

*Robb W. Rumsey*, of Rumsey Law Offices, of Wichita, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

ABBOTT, J.: The trial court dismissed driving while under the influence of alcohol or drugs and reckless driving charges against defendant, Daniel P. Johnson, on the basis of double jeopardy. The State appeals the dismissal of the complaint.

An assigned magistrate judge originally heard the case against the defendant at a bench trial. During the trial, it became obvious the trial could not be completed that day. The judge told counsel that his home district was 5 hours away. The defendant's counsel indicated that he would be willing to drive to the judge's home district to complete the trial at a later date. Neither the defendant nor the State requested a mistrial. Both parties left court that day believing the trial would be continued to a later date which would be convenient for all parties involved and believing that the trial might be completed in the magistrate's home district.

However, the next day, on September 15, 1995, the State was informed that the magistrate judge had declared a mistrial based on inconvenient forum. The State informed the defendant of the mistrial. The mistrial was declared without allowing either party to be heard on the matter and without either party's consent.

The State asserts that the magistrate judge thought it would be ridiculous to make the parties, witnesses, and court reporter drive 5 hours to the magistrate's home district in order to complete the case when, upon the immediate conclusion of the trial, the defendant, if he was convicted, would be entitled to a de novo appeal in front of a district judge. To avoid this result, the State argues that the magistrate judge granted a mistrial so that a district judge could hear the case in the first instance.

After the mistrial was declared, the State refiled the charges against the defendant. The defendant filed a motion to dismiss the charges on the ground of double jeopardy. The district court heard arguments on the motion. The district court found that the mistrial was not based on the ground of manifest necessity, that the defendant had been placed in jeopardy at the first trial, and that an authorized exception did not exist to allow him to be tried again for these charges. Thus, the district court held that a second prosecution of the charges would result in double jeopardy, and the court dismissed the charges filed against the defendant. In so holding, the district court stated:

"It appears to me in reviewing the statutes, the cases and the circumstances of this case, that the mistrial in this case was granted in the interests of convenience and in the interests of practicality and in the interests of time economy. It does not appear to me that the mistrial was granted in the interest of justice or to prevent injustice. It would not have been impossible to proceed. I don't think it would have been requiring the parties to travel to where the Judge is, even though the parties, apparently, offered to do so. It would merely have required that the Judge return and complete the trial.

"In order for a mistrial, I think, to be valid or appropriate, the statute requires that it was impossible to proceed and under the circumstances of this case, I don't think it was impossible to proceed. It would have been very inconvenient to proceed but not impossible. I don't think there was a manifest necessity for a mistrial. The ends of justice would not have been defeated by the trial continuing at a later date, so I think I will grant the defendant's motion. It appears to me that the

mistrial was not proper and therefore, retrying the case would constitute double jeopardy which is constitutionally impermissible."

The State timely appealed the district court's dismissal of the complaint pursuant to K.S.A. 22-3602(b)(1).

A defendant's right to be free from double jeopardy is recorded in the Fifth Amendment to the United States Constitution, which provides:

"No person shall be held to answer for a capital, or otherwise infamous crime, unless on a presentment or indictment of a Grand Jury, except in cases arising in the land or naval forces, or in the Militia, when in actual service in time of War or public danger; *nor shall any person be subject for the same offence to be twice put in jeopardy of life or limb*; nor shall be compelled in any Criminal Case to be a witness against himself, nor be deprived of life, liberty, or property, without due process of law; nor shall private property be taken for public use, without just compensation."

Such double jeopardy protection is applicable to the states through the 14th Amendment to the United States Constitution. *State v. Bates*, 226 Kan. 277, 283-84, 597 P.2d 646 (1979) (citing *Benton v. Maryland*, 395 U.S. 784, 23 L. Ed. 2d 707, 89 S. Ct. 2056 [1969]). Similar protection against double jeopardy is also provided in the Kansas Constitution Bill of Rights, § 10:

"In all prosecutions, the accused shall be allowed to appear and defend in person, or by counsel; to demand the nature and cause of the accusation against him; to meet the witness face to face, and to have compulsory process to compel the attendance of the witnesses in his behalf, and a speedy public trial by an impartial jury of the county or district in which the offense is alleged to have been committed. *No person* shall be a witness against himself, or be *twice put in jeopardy for the same offense.*"

Protection against double jeopardy is also embodied in Kansas statutory law. K.S.A. 21-3108 provides:

"(1) A prosecution is barred if the defendant was formerly prosecuted for the same crime, based upon the same facts, if such former prosecution:

. . . .

(c) Was terminated without the consent of the defendant after the defendant had been placed in jeopardy. . . . A defendant is in jeopardy when he or she is put on trial in a court of competent jurisdiction upon an indictment, information or complaint sufficient in form and substance to sustain a conviction, and in the case of trial by jury, when the jury has been impaneled and sworn; or where the

case is tried to the court without a jury, when the court has begun to hear evidence."

The defendant asserts that a second prosecution against him for DUI and reckless driving charges is barred because he was formerly prosecuted for these same crimes, based on the same facts, but the former prosecution was terminated by a mistrial, without his consent, after he had been placed in jeopardy. The State does not dispute that the defendant was put in jeopardy at the first trial. However, the State alleges that there are certain exceptions to the double jeopardy protection which would allow a second trial under these circumstances. Thus, the question here is whether an exception exists to allow the defendant to be tried again on the DUI and reckless driving charges without violating double jeopardy.

K.S.A. 21-3108 lists three exceptions to the double jeopardy rule. Under 21-3108, a second trial is barred if the defendant was placed in jeopardy in a former trial for the same crimes and the former trial was terminated by a mistrial, without the consent of the defendant. However, such trial termination shall not extinguish the original jeopardy, thereby creating a double jeopardy exception, if the mistrial occurred due to: "(i) The illness or death of an indispensable party; or (ii) the inability of the jury to agree; or (iii) the impossibility of the jury arriving at a verdict." K.S.A. 21-3108(1)(c). Neither party argues that any of these exceptional situations existed in this case.

K.S.A. 22-3423 also lists exceptions to double jeopardy protection. It provides that a defendant may be subject to second prosecution, even though the defendant has already been placed in jeopardy by a former trial, if the former trial was terminated by mistrial for one of the following reasons:

"(a) It is physically impossible to proceed with the trial in conformity with law; or

"(b) There is a legal defect in the proceedings which would make any judgment entered upon a verdict reversible as a matter of law and the defendant requests or consents to the declaration of a mistrial; or

"(c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution; or

"(d) The jury is unable to agree upon a verdict; or

"(e) False statements of a juror on voir dire prevent a fair trial; or

"(f) The trial has been interrupted pending a determination of the defendant's competency to stand trial." K.S.A. 22-3423(1)(a)-(f).

The State does not argue on appeal that any of these double jeopardy exceptions existed when the magistrate judge ordered a mistrial. The State concedes that this statute does not authorize a second trial against the defendant. Instead, the State cites to *State v. Folkerts*, 229 Kan. 608, 612-13, 629 P.2d 173 (1981), *cert. denied* 454 U.S. 1125 (1981). This case provides:

" 'There is a contention that the statute prescribes the only grounds which justify the discharge of a jury from rendering a verdict, and that the ground upon which the discharge was based in the present instance is not one of those enumerated in the statute. In behalf of the state it is plausibly argued that the statute does not undertake to specify all of the instances which would justify the discharge of a jury; that under the constitutional provision as to jeopardy, and the common-law rules in vogue when it was adopted, a jury may be discharged not only for reasons named in the statute but whenever it appears to the court that there is a manifest necessity for the act or that the ends of justice would otherwise be defeated.' " (Quoting *State v. Hansford*, 76 Kan. 678, 685, 92 Pac. 551 [1907].)

This idea that a mistrial may be granted and may constitute an exception to the double jeopardy rule, even though the mistrial is not based on a specific reason enumerated in the statutes, resulted in the following rule:

" 'Even when a mistrial is declared without the consent of the defendant or upon his motion, a retrial is still constitutionally permissible *if* the judge exercised sound discretion in determining justice required a mistrial. [Citation omitted.] The test to be applied in assessing the judge's discretion in declaring a mistrial and discharging the jury from giving a verdict is whether there is a *manifest necessity* for the act, or the *ends of public justice would otherwise be defeated*. [Citation omitted.]' " *In re Habeas Corpus Petition of Hoang*, 245 Kan. 560, 568, 781 P.2d 731 (1989), *cert. denied* 494 U.S. 1070 (1990) (quoting *State v. Bates*, 226 Kan. 277, 283, 597 P.2d 646 [1979]).

Thus, the question here is whether the magistrate judge abused his discretion when he found manifest necessity existed and granted a mistrial due to the inconvenient forum. If so, then the defendant may not be tried a second time on the same charges without violating double jeopardy, and the district court's dismissal of the second prosecution must be affirmed.

In its brief, the State first discusses the doctrine of inconvenient forum or "forum non conveniens." Forum non conveniens is part of the common-law of the State of Kansas and is defined as the "power of the court to decline jurisdiction when convenience of parties and ends of justice would be better served if action were brought and tried in another forum." Black's Law Dictionary 655 (6th ed. 1990); see *Gonzales, Administrator v. Atchison, T. & S. F. Rly. Co.*, 189 Kan. 689, 695, 370 P.2d 1019 (1962); "[A]s application of the doctrine [of forum nonconveniens] is within trial court discretion, the trial court will be reversed on appeal only when it has abused that discretion." *Environmental Ventures, Inc. v. Alda Services Corp.*, 19 Kan. App. 2d 292, 299, 868 P.2d 540 (1994).

The State asserts that the application of the forum non conveniens doctrine in this case was not an abuse of discretion because the magistrate would not have been able to hear the entire case before his assignment to Reno County ended. Thus, to finish the case, either the magistrate would have had to make the 5-hour drive and return to Reno County when his own caseload allowed, or both parties would have had to travel to the magistrate's jurisdiction with all of their evidence and witnesses, whenever their trial schedules allowed. This could have delayed the completion of the trial. Further, all of this traveling effort would have been for naught because the defendant, should he have lost in front of the magistrate, would have had the right to a de novo appeal to a district court in Reno County. Thus, the State argues that the magistrate did not abuse his power in declaring a mistrial because manifest necessity existed due to the inconvenient forum.

However, based on Kansas case law, the defendant contends that manifest necessity only exists and only requires a mistrial if the trial is unable to proceed under any circumstances without injustice to one party or the other. The defendant argues that this was not the case here. According to the defendant, the trial could have proceeded without injustice to either party, even though the magistrate's assignment to Reno County was going to end before the trial concluded, simply by continuing the case until the parties could travel to the magistrate's district or the magistrate could return to Reno County. Neither party suggested at the first trial that

they would have been prejudiced by this situation. Thus, the defendant asserts that manifest necessity did not exist and that the magistrate abused his discretion in granting a mistrial based on the grounds of inconvenient forum.

The Kansas courts have addressed the mistrial exceptions to the double jeopardy rule on several occasions. In *States v. Bates*, 226 Kan. 277, the defendant was placed in jeopardy at her first trial, and the trial court granted a mistrial over the defendant's objections. The defendant was tried a second time and convicted of voluntary manslaughter and aggravated assault. The defendant appealed, contending that the granting of a mistrial in her first trial was improper and that the second trial subjected her to double jeopardy.

In *Bates*, the mistrial in the first trial arose out of the following situation: After being charged with voluntary manslaughter and aggravated assault, the defendant requested a mental examination to determine if she was competent to stand trial. The request was granted. Based on the mental examiner's recommendation, the trial court found that the defendant was competent to stand trial. Later, the defendant filed a notice of her intent to rely on the insanity defense, and she again claimed that she was incompetent to stand trial. The State did not request an additional psychological evaluation. The day before the first trial, the defendant was again found competent to stand trial.

At trial, the State called as its first witness the victim of the aggravated assault. On direct examination, the victim testified that when the defendant stopped assaulting her, the defendant "kind of caught herself and . . . got this weird look on her face. . . . [S]he kind of backed off [and] started walking around." 226 Kan. at 279. The testimony supported the defendant's insanity defense. The next day, the State moved for a mistrial so it could have the defendant mentally examined to determine if she was competent to stand trial and to determine if she was sane when the aggravated assault and voluntary manslaughter occurred. The defendant objected, but the trial court granted a mistrial. After evaluation by the State's expert, the defendant was found competent to stand trial. This expert also concluded that the defendant was

sane at the time the offenses occurred. A second trial was scheduled. The defendant argued that a second trial would violate her constitutional protections against double jeopardy. The trial court disagreed, and the second trial continued. At the second trial, the State's expert testified that the defendant was sane when the offenses occurred. The jury in the second trial found the defendant guilty of voluntary manslaughter and aggravated assault. The defendant appealed her convictions from the second trial.

On appeal, this court held that since the defendant had been declared competent to stand trial the day before the first trial began, the only reason the State had requested and received a mistrial was that it did not realize how strong the defendant's insanity defense was. The defendant's insanity defense was even supported by the State's own witnesses on direct examination. Due to the strength of this defense, the State realized it needed an expert to examine the defendant and testify that she was sane when she committed the charged acts. The State requested a mistrial so that it would have an opportunity to repair its case, after the defendant had already been placed in jeopardy at the first trial. This court found that the mistrial, based on these circumstances, was improper. Thus, this court found that the second trial was a violation of double jeopardy. 226 Kan. at 281-82.

In so ruling, this court focused on the general rule that "when a mistrial is declared without the consent of the defendant or upon his motion, a retrial is still constitutionally permissible if the judge exercised sound discretion in determining justice required a mistrial." 226 Kan. at 283. This court ruled that "[t]he test to be applied in assessing the judge's discretion in declaring a mistrial and discharging the jury from giving a verdict is whether there is manifest necessity for the act, or the ends of public justice would otherwise be defeated." 226 Kan. at 283.

From several cases, this court synthesized a rule in *Bates* that the existence of manifest necessity depends upon a balancing of the interests between the defendant's "right not to be placed in double jeopardy versus the public interest in seeking a final determination through a second trial." 226 Kan. at 284. This court acknowledged that the defendant's right to have his or her trial com-

pleted in a certain tribunal may be subordinated to the public interest in allowing the State to prosecute an accused. However, this court also pointed out that the prosecution has the burden to prove that manifest necessity justifies a mistrial which is declared without the defendant's consent. 226 Kan. at 286. Manifest necessity may exist if the situation requiring a mistrial was of an unforeseeable nature of which neither party was responsible. However, manifest necessity does not exist when prosecutorial or judicial overreaching has occurred.

Here, it was foreseeable that the first trial, addressing both the reckless driving and DUI charges, might last longer than the magistrate's appointment to the district. However, it appears that both parties, in good faith, did not actually foresee this contingency. Further, neither party appears responsible for the scheduling problem. In fact, the State did not request or expect a mistrial and was totally surprised when the magistrate declared a mistrial without prior notice or an opportunity for the parties to be heard on the issue. Thus, the State argues that this is one of those situations in which the defendant's right to have his or her case decided in a certain tribunal is subordinate to the " 'public interest in affording the prosecutor one full and fair opportunity to present his evidence' " in a second trial. 226 Kan. at 286 (quoting *Arizona v. Washington*, 434 U.S. 497, 54 L. Ed. 2d 717, 98 S. Ct. 824 [1978]).

The defendant points out that it is the State's burden to prove manifest necessity existed in the first trial. According to the defendant, the State has not met this burden because all the parties had to do was travel to the magistrate's district or have the magistrate return to Reno County in order to alleviate the need for a mistrial. As such, the defendant asserts that manifest necessity did not exist, the mistrial was improperly granted, and a second trial would violate his double jeopardy protections.

In *State v. Folkerts*, 229 Kan. 608, the defendant's first trial had been underway for 2½ days when the trial judge learned that one of the jurors was a recently convicted felon and was not qualified to sit as a juror. The State agreed to proceed with 11 jurors, but the defendant insisted that the trial proceed with all 12 jurors. The court, on its own motion and over the defendant's objections, de-

clared a mistrial and discharged the jury. The State initiated a second trial against the defendant. The defendant filed a motion to dismiss the charges against him on the ground that a second trial would violate his double jeopardy protections. The trial court denied the motion, the second trial proceeded, and the defendant was convicted.

The defendant appealed, claiming that the mistrial was improper, thereby making the second trial a violation of double jeopardy. This court found that the mistrial was proper because manifest necessity existed due to the fact that one juror was not qualified to decide the case. Thus, this court held that the second trial did not violate double jeopardy. 229 Kan. at 610.

In *Folkerts*, the trial court correctly interpreted the statute as requiring it to excuse the unqualified juror. There were apparently no alternate jurors. The defendant refused to proceed with 11 jurors, but insisted on proceeding with 12. Thus, the trial court had no other choice but to declare a mistrial. As such, manifest necessity supported the mistrial. Here, the magistrate had other options. The law would have allowed the parties to travel to the magistrate's county by agreement or, without the parties' agreement, for the magistrate to return to Reno County to complete the trial at a later date. Both parties agreed to the traveling option and did not request a mistrial. Thus, the magistrate had two other options besides declaring a mistrial. As such, manifest necessity did not exist and the mistrial was improperly granted. A second trial would have violated the defendant's constitutional protections against double jeopardy.

The fact that the magistrate's appointment to Reno County was to end the next day is of no import. The magistrate's appointment to Reno County was for a specific period of time, but the appointment allowed the magistrate "to hear and determine" assigned cases. Thus, the magistrate would have had jurisdiction to complete assigned cases which were started but not completed during the period of appointment.

In *In re Habeas Corpus Petition of Hoang*, 245 Kan. 560, the parties realized at the defendant's first trial, after the defendant had been placed in jeopardy, that the defendant's appointed coun-

sel had a conflict of interest. The defense counsel's law firm had previously represented a key prosecution witness who planned to testify against the defendant. Concerned about the defense counsel's cross-examination of the key prosecution witness and the use of confidential information obtained in the prior representation, the State objected to the defense counsel's representation of the defendant. The trial court held that a conflict of interest existed, disqualified the defense counsel, and declared a mistrial. New counsel was appointed.

At this time, the defendant filed a motion requesting that charges against him be dismissed because the mistrial was not justified by manifest necessity and a second trial would result in double jeopardy. The trial court denied the defendant's motion, and the defendant filed a writ of habeas corpus regarding the double jeopardy issue with this court.

First, after a careful analysis of the conflict of interest issue, this court found that the trial court did not abuse its discretion in ruling that a conflict of interest existed and in excusing the defense counsel. Next, this court addressed whether the trial court abused its discretion in finding that these reasons constituted manifest necessity which justified a mistrial. In finding that manifest necessity did exist and that the trial court properly declared a mistrial, this court stated:

"Having concluded the trial court did not abuse its discretion in holding [that the defense counsel] had a conflict of interest and in disqualifying him from serving as defense counsel, we must determine whether or not there was a manifest necessity for declaring a mistrial over defendant's objection. *What were the trial judge's options?* Before him were a prosecutor, a jury, and a now attorneyless defendant. He could hardly recess the trial, appoint new counsel, give the new attorney adequate time to prepare for trial, and reconvene at some undeterminable distant future date. *This was not a defect which could be remedied by any less drastic alternative than declaration of a mistrial.* The declaration of a mistrial meets the manifest necessity test.

"We must conclude that petitioner's claim of double jeopardy is without merit. We have analyzed what led to the declaration of mistrial and have found no abuse of discretion." 245 Kan. at 569.

From the above cases, the inconvenient forum (according to the magistrate judge) did not constitute manifest necessity so as to

justify a mistrial. Thus, the magistrate judge abused his discretion in granting the mistrial. As such, a second trial on these same charges would violate the defendant's constitutional protections against double jeopardy. The district court did not err in dismissing the complaint based on double jeopardy grounds.

Appeal denied.