Luckert, J., dissenting:
I disagree with the majority's conclusion that the trial judge presiding over Rictor Bowman's first prosecution abused his discretion when he declared a mistrial. The judge terminated the proceedings on all counts because comments made by the prosecutor during opening statements caused a level of prejudice that made a fair and impartial verdict impossible. The trial judge, in the exercise of his discretion, assessed the circumstances, evaluated the prejudice, considered alternatives to a mistrial, and made the considered judgment that the parties would not have a full and fair opportunity to present their evidence to an impartial jury. In doing so, the trial judge made no error of law or fact, and his assessment was not arbitrary, fanciful, or unreasonable. In other words, he did not abuse his discretion. The majority, in reaching the holding that the trial judge erred, focuses on the unavailability of the child witness. While the child's unavailability set off a chain of circumstances that made the prosecutor's statement prejudicial, the trial judge did not declare the mistrial because the child failed to take the witness' oath. The majority has thus shifted the focus from the trial judge's ruling, and this shift skews its analysis.
I also disagree with the majority's conclusion that a second prosecution is barred by K.S.A. 2018 Supp. 21-5110, which protects against being placed in double jeopardy. The statute provides exceptions, and the trial judge's determination that the jury could not reach a fair and impartial verdict meets the exception in *462 K.S.A. 2018 Supp. 21-5110(a)(3)(C). Thus, the statute does not bar a second prosecution.
Finally, because I reach those conclusions, I must consider an issue the majority did not have to address: Would a second prosecution violate the double jeopardy protections in either the United States or the Kansas Constitutions? Because the mistrial was a manifest necessity, I conclude neither constitution prohibits a second trial. I would thus deny Bowman's request for a writ of habeas corpus.
1. The trial judge did not abuse his discretion in granting a mistrial.
After the child had been called to the witness stand but did not take the witness' oath, the judge made a series of findings. As relevant to the reasons for the mistrial, during remarks at trial and the later hearing, the trial judge found:
• The child was "shy in a very intimidating environment," Bowman's objection to the witness competence (made after long argument) was overruled, and the court reporter was allowed to continue to ask the child to take the oath;
• The microphone had been inadvertently left on during those arguments about the child's competency;
• It was apparent after additional attempts to administer the oath that the witness was "frozen" and "not giving the Court any indication that she [was] going to take the oath";
• The witness was "not competent to testify and she cannot provide testimony" because she failed to take the oath;
• The child's testimony was unnecessary to the State's prosecution of some counts;
• The prosecutor's opening statement had included details about Bowman's alleged conduct as revealed by the child during a forensic interview that would not be admissible without the child's testimony;
• The State's opening statement "was highly prejudicial in that circumstance as it related to oral sex, details of penetration of a three-year-old child and the Court does not view a curative instruction as being effective in that circumstance" because the prejudice would "bleed over" to all counts.
The trial judge then ruled a mistrial was necessary under K.S.A. 22-3423(1)(a) and (c), which provide:
"(1) The trial court may terminate the trial and order a mistrial at any time that he finds termination is necessary because:
(a) It is physically impossible to proceed with the trial in conformity with law; or
....
(c) Prejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution."
I agree with the majority that the facts here do not present circumstances that made it physically impossible to proceed with a trial. But I disagree with the holding that subsection (c) does not apply.
To determine if a mistrial provision applies, a trial judge follows a two-step analysis. First, the trial judge must determine if there was a fundamental failure in the proceeding. Second, the judge must consider whether the failure will necessarily result in an injustice or whether the judge can cure or mitigate it through a jury admonition or by another method. The trial judge has wide discretion at each step. Judicial discretion is abused if judicial action (1) is based on an error of law, (2) is based on an error of fact, or (3) is arbitrary, fanciful, or unreasonable. See State v. Ward , 292 Kan. 541, 550-51, 256 P.3d 801 (2011).
As to the first step, a failure occurred in Bowman's trial. The prosecutor told the jury about information that ultimately did not come into evidence. This failure is not uncommon. On occasion, evidence at trial will not match an attorney's representations during opening statements about what he or she expects to prove. Judges thus routinely instruct jurors that "[s]tatements, arguments, and remarks of counsel ... are not evidence. If any statements are made that are not supported by evidence, they should be disregarded." PIK Crim. 4th 50.070. At times, however, the discrepancy is so prejudicial the error becomes a fundamental failure that necessarily must lead to a mistrial. Such a *463 circumstance arose in Arizona v. Washington , 434 U.S. 497, 98 S. Ct. 824, 54 L.Ed.2d 717 (1978), one of the leading decisions of the United States Supreme Court discussing the implications of a mistrial on a defendant's constitutional protection against double jeopardy.
In Washington , the trial judge granted a mistrial in a second prosecution after defense counsel, during his opening statement, informed the jury the first trial ended in a mistrial because the prosecutor had withheld potentially exculpatory information. The prosecutor moved for a mistrial, but the judge denied the motion, pointing out he had not yet ruled on whether he would admit into evidence the reasons for the first mistrial. The prosecutor renewed the motion the following morning. This time the trial judge ruled on the evidentiary question and granted the mistrial motion. The United States Supreme Court accepted the state court trial and appellate court determinations that defense counsel had erred. The Supreme Court then held the mistrial was a manifest necessity. 434 U.S. at 511-13, 98 S.Ct. 824.
Many cases from this court likewise establish that error-a fundamental failure-may occur when an attorney tells the jury about facts that are not and will not be admitted into evidence. And this error can arise from statements made at any point from voir dire to closing argument. See, e.g., State v. Simmons , 292 Kan. 406, 412-15, 254 P.3d 97 (2011) (discussing rules of ethics prohibiting attorneys from telling jury about evidence that is not or will not be in evidence and cases finding that doing so is error).
Here, in determining if a fundamental failure occurred because of the prejudicial nature of the child's allegations of rape and oral sex that would not be supported by evidence, the trial judge made no error of law or fact. And reasonable people could agree with this determination. In sum, the trial judge did not abuse his discretion by finding a fundamental failure had occurred.
At the second step of a mistrial analysis, the trial judge must assess whether the failure in the proceeding will necessarily result in an injustice or whether the judge can cure or mitigate it through a jury admonition or another method. As noted above, trial judges routinely instruct juries to disregard statements of counsel that are unsupported by evidence. And, as the majority points out, this court generally presumes a jury will follow an admonition or instruction. But we have qualified that rule. In State v. Angelo , 287 Kan. 262, 285, 197 P.3d 337 (2008), for example, we stated: "[W]here the trial court sustains an objection and admonishes the jury to disregard the objectionable testimony, reversal is not required unless the remarks are so prejudicial as to be incurable ." (Emphasis added.) This court has even instructed that "[w]hen an event of prejudicial misconduct, the damaging effect of which cannot be removed by admonition and instruction, is presented to the jury, the trial judge must declare a mistrial." (Emphasis added.) State v. Lewis , 238 Kan. 94, 97, 708 P.2d 196 (1985). The Lewis case presented just such a situation. "Neither admonition nor instruction by the trial judge could insure that the defendants would receive a fair trial." 238 Kan. at 99, 708 P.2d 196.
The United States Supreme Court reached a similar conclusion in Washington . It held the trial judge's determination that such an instruction would not cure the prejudice should not be second guessed. The Supreme Court stated:
"We recognize that the extent of the possible bias cannot be measured, and that the District Court was quite correct in believing that some trial judges might have proceeded with the trial after giving the jury appropriate cautionary instructions. In a strict, literal sense, the mistrial was not 'necessary.' Nevertheless, the overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." Washington , 434 U.S. at 511, 98 S.Ct. 824.
This court likewise grants broad discretion to a trial judge making the assessment of prejudice. See Ward , 292 Kan. at 550, 256 P.3d 801. The situation in Bowman's trial was one *464 where the trial judge was in the best situation to assess the impact on the jury.
The majority applies a different rule because, in part, continuing with the trial was not an absolute impossibility. See K.S.A. 22-3423(1)(c) (allowing a mistrial if "[p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution."). But impossibility in this context does not mean absolute impossibility. Webster's New World College Dictionary 731 (5th ed. 2014) defines "impossibility" as "the fact or quality of being impossible." In turn, it defines "impossible" as one of three alternatives: "not capable of being, being done, or happening"; "not capable of being done easily or conveniently"; "not capable of being endured, used, agreed to, etc. because disagreeable or unsuitable." These definitions suggest "impossibility" does not mean something absolutely cannot be done. Instead, impossible can mean something cannot be done easily or conveniently or cannot happen in a suitable manner.
Caselaw and commentary document that the Legislature intended courts to use a test of suitability-phrased in terms of suitable for achieving a fair and impartial verdict-when applying K.S.A. 22-3423(1)(c). This court's statements in Angelo and Lewis suggest as much. Also, around the time the Kansas Legislature enacted K.S.A. 22-3423 and the mistrial statute-both of which refer to the "impossibility" of a verdict-Washburn University School of Law Professor Raymond Spring wrote that the Legislature intended to codify caselaw. Spring, The Effect of Former Prosecutions: Something Old and Something New Under Kan. Stat. Ann. Sec. 21-3108 , 9 Washburn L.J. 179, 180 (1970). As to the use of the word "impossibility," he explained:
"The impossibility of the jury arriving at a verdict would seem to encompass the various circumstances which could occur during trial which would render it physically impossible to continue with the trial (such as the destruction of the courthouse by a tornado in the midst of the trial) or legally impossible for the jury to render a viable verdict (such as belated discovery that a juror is disqualified)." 9 Washburn L.J. at 189.
Spring cited State v. Hansford , 76 Kan. 678, 92 P. 551 (1907), overruled on other grounds as stated in State v. Foster , 290 Kan. 696, 718, 233 P.3d 265 (2010), as support for the interpretation that an impossibility of the jury arriving at a verdict includes legal impossibilities.
In Hansford , a juror asked the judge to excuse him after the judge had sworn the jury and heard some testimony. The juror felt he could not be impartial because his family had experienced a crime much like the one at issue in the trial. The Hansford court held a mistrial was a necessity because a fair and impartial verdict was an impossibility:
"When a juror, as in this case, confesses to an incurable prejudice which disqualifies him from exercising the functions of a juror or acting impartially as between the parties a continuance of the trial would be a farce, as the object of a trial-a fair and impartial verdict-becomes an impossibility. After learning of this situation by a judicial inquiry nothing was left for the court except to discharge that jury and impanel another." 76 Kan. at 682-83, 92 P. 551.
Likewise, in State v. Gray , 189 Kan. 398, 369 P.2d 330 (1962), a juror advised the trial judge he felt he could not render a fair and impartial verdict. The Gray court quoted Hansford and recognized the authority of trial courts to declare a mistrial and order a second trial without violating the double jeopardy doctrine:
" ' "[C]ourts of justice are invested with the authority to discharge a jury from giving any verdict whenever in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated, and to order a trial by another jury; and a defendant is not thereby twice put in jeopardy." ' [ Citation omitted.]" 189 Kan. at 400, 369 P.2d 330.
The Gray court explained a trial judge can exercise discretion to declare a mistrial when "there is a real, absolute, and unequivocal necessity for discharge of a jury in order that the ends of justice will not be defeated."
*465 189 Kan. at 401, 369 P.2d 330. The Gray court found no abuse of discretion when the trial court found a mistrial necessary because neither the defendant nor the State could receive a fair trial. 189 Kan. at 401, 369 P.2d 330. A similar analysis was applied in State v. Howard , 221 Kan. 51, 55-57, 557 P.2d 1280 (1976). And, as previously noted, in the more recent case of Lewis , this court directed trial judges to declare a mistrial when an admonition would not cure prejudice caused by a trial error. See 238 Kan. at 97, 708 P.2d 196.
Thus, Kansas' caselaw agrees with Washington . To paraphrase, the word "impossible" is not to be read in the strict, literal sense. Instead, courts apply it in the legal sense of whether it is possible to achieve a fair and impartial verdict. And appellate courts "accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected by the improper comment." Washington , 434 U.S. at 511, 98 S.Ct. 824.
The majority refused to give deference to the trial judge's assessment, however, because Bowman had objected to the mistrial. In essence, the majority concludes the defendant's objection suspends a trial judge's duty to assure a defendant receives a fair trial. In my view, the objection does not determine whether a mistrial is necessary, although it is important in the analysis of which provisions in the Kansas double jeopardy statute apply. See K.S.A. 2018 Supp. 21-5110.
The reason the objection is not determinative rests in the public's interest in a fair trial. As the United States Supreme Court held in Washington , a defendant's "valued right to have the trial concluded by a particular tribunal is sometimes subordinate to the public interest in affording the prosecutor one full and fair opportunity to present his evidence to an impartial jury." Washington , 434 U.S. at 505, 98 S.Ct. 824. The Court elaborated on this conclusion:
"An improper opening statement unquestionably tends to frustrate the public interest in having a just judgment reached by an impartial tribunal. Indeed, such statements create a risk, often not present in the individual juror bias situation, that the entire panel may be tainted. The trial judge, of course, may instruct the jury to disregard the improper comment. In extreme cases, he may discipline counsel, or even remove him from the trial as he did in United States v. Dinitz , 424 U.S. 600[, 96 S. Ct. 1075, 47 L.Ed.2d 267 (1976) ]. Those actions, however, will not necessarily remove the risk of bias that may be created by improper argument. Unless unscrupulous defense counsel are to be allowed an unfair advantage, the trial judge must have the power to declare a mistrial in appropriate cases." Washington , 434 U.S. at 512-13, 98 S.Ct. 824.
Here, there is no suggestion defense counsel acted unscrupulously. The roles were flipped from Washington , and here it was the prosecutor who made the prejudicial argument. In objecting, Bowman's counsel was seeking to protect Bowman's rights. But neither did the prosecutor act unscrupulously when she disclosed information that would not be admitted at trial-the same action as committed by defense counsel in Washington . The trial judge made extensive findings and concluded the prosecutor had acted in good faith. The motivation and the actor do not matter, however. Ultimately, the rights of the defendant do not trump the public interest in a fair trial.
Still, the majority concludes the public interest was essentially forfeited because the prosecutor took a risk in proceeding as if the child would testify. Yet the prosecutor acted in a manner consistent with Kansas law. K.S.A. 60-460(a) provides: "A statement previously made by a person who is present at the hearing and available for cross-examination with respect to the statement and its subject matter, provided the statement would be admissible if made by declarant while testifying as a witness." In addition, this court has not required litigants to call the declarant before introducing hearsay about the declarant's out-of-court statements. See State v. Davis , 236 Kan. 538, 541, 694 P.2d 418 (1985). We should not now hold the prosecutor to a different rule.
The witness also had repeatedly revealed a willingness to testify. Shortly before trial, she testified in the courtroom during the competency hearing. While at first shy, she *466 answered questions. The judge had also watched the video of the child's forensic interview. There, she had again seemed shy, but she had provided detailed information. The judge discussed these points at considerable length, describing the child's demeanor in the various situations. The trial judge also concluded the prosecutor had acted reasonably and in good faith. Indeed, the prosecutor took steps to prevent the situation that unfolded by using the closed circuit procedure and allowing a comfort person to sit with the child while she testified.
The State, in assessing the risk, knew how the child had reacted to being interviewed and to being on the witness stand. And the State knew the steps taken to create an environment that would make the child more comfortable. This knowledge reasonably led the State to present its case based on the child testifying. But the inadvertent failure to turn off the microphone nullified all these steps. The risk assessment changed significantly. We should not play Monday morning quarterback by second-guessing that assessment.
That said, the majority makes a valid point that we do not know the full extent of the prejudice caused by leaving the microphone on because we cannot know how or if the arguments affected the child. Indeed, there is no direct evidence the child heard the exchange or was influenced by it. But direct evidence is unnecessary because plenty of circumstantial evidence exists. See State v. Lowery , 308 Kan. 1183, Syl. ¶ 13, 427 P.3d 865 (2018) (holding "there is no distinction between direct and circumstantial evidence in terms of probative value"). And the circumstantial evidence gave the trial judge the ability to make the assessment that we cannot make on a cold record.
The trial judge could observe the child during the arguments. Near the end of the exchange between the attorneys and the judge, the prosecutor commented, "We have a witness on the loose." And defense counsel stated, "[S]he's left the witness stand." Later, the trial judge also detailed his observations of the child's demeanor. Before the arguments, he observed a child he described as "shy." After the arguments, he described the child as "frozen." Significantly, at the pretrial hearing on the State's motion to use the closed circuit procedure allowed by K.S.A. 22-3434, he cited to the testimony of the child's therapist and concluded there was a substantial risk she would "essentially shut down" or "not open up" if she felt threatened. Circumstantial evidence exists to support the conclusion that is what happened when Bowman's counsel argued she should not be allowed to testify.
Granted, the trial judge's findings about the effect of the open microphone on the child are somewhat vague. Even so, they sufficiently convey the change in the child's demeanor and the judge's finding that prejudicial conduct occurred in the courtroom when he inadvertently failed to turn off the microphone. In my view, the trial judge's findings and the evidence supporting those findings are sufficient. And the trial judge is in the best position to evaluate the incident, to recognize the chain of circumstances it triggered that led to the fundamental failure in the proceedings, and to assess the extent of prejudice that fundamental failure caused.
Ultimately, the focus must be on the trial judge's assessment that the prosecutor's statements prejudiced the jury to the point no admonition would provide a cure. I give full weight to that assessment. As the United States Supreme Court explained in Washington :
"There are compelling institutional considerations militating in favor of appellate deference to the trial judge's evaluation of the significance of possible juror bias. He has seen and heard the jurors during their voir dire examination. He is the judge most familiar with the evidence and the background of the case on trial. He has listened to the tone of the argument as it was delivered and has observed the apparent reaction of the jurors. In short, he is far more 'conversant with the factors relevant to the determination' than any reviewing court can possibly be." Washington , 434 U.S. at 513-14, 98 S.Ct. 824.
I thus conclude the judge did not abuse his discretion in granting the mistrial under K.S.A. 22-3423(1)(c).
*467 2. K.S.A. 2018 Supp. 21-5110 does not bar a retrial.
I also disagree with the majority's holding that K.S.A. 2018 Supp. 21-5110 protects Bowman from a second prosecution. Subsection (a)(3) governs whether a second prosecution is statutorily permissible. It applies if the former prosecution
"(3) was terminated without the consent of the defendant after the defendant had been placed in jeopardy, except where such termination shall have occurred by reason of:
(A) The illness or death of an indispensable party;
(B) the inability of the jury to agree; or
(C) the impossibility of the jury arriving at a verdict." K.S.A. 2018 Supp. 21-5110(a).
The majority holds this provision does not apply because it was possible for Bowman's first jury to have found him either guilty or to have acquitted him. Certainly, this is a reality. But more is at stake than the ability to reach a verdict. If it were not, K.S.A. 22-3423(1)(c), which allows a mistrial when "[p]rejudicial conduct ... makes it impossible to proceed with the trial without injustice," would be meaningless as a practical matter. Such an interpretation is contrary to our rules of statutory interpretation. See Kansas Dept. of Revenue v. Powell , 290 Kan. 564, 570, 232 P.3d 856 (2010) ("We presume that the legislature does not intend to enact meaningless legislation."). As I have discussed, I read our caselaw to make clear that judges applying the concept of "impossibility," as expressed in the mistrial statute and K.S.A. 2018 Supp. 21-5110(a)(3)(C), must consider whether the jury could reach a fair and impartial verdict.
Nothing in the language of K.S.A. 2018 Supp. 21-5110 mandates a different conclusion. The Legislature first adopted an exception for the most obvious situation in which a verdict is impossible: where the jury cannot agree on the verdict. See K.S.A. 2018 Supp. 21-5110(a)(3)(B). So we know that the impossibility referred to in (a)(3)(C) must mean something other than this. See Powell , 290 Kan. at 570, 232 P.3d 856. But what exactly the Legislature meant is difficult to discern. The legislative record provides little insight because the wording of the statute was introduced as an amendment in committee and the record does not explain why. Minutes, Senate Judiciary Committee, February 10, 1969.
Still, I find some guidance in the contemporaneous record of Professor Spring's article. As I have noted before, he reported that the Legislature intended for the new statute to codify caselaw. See Spring, 9 Washburn L.J. at 180. That caselaw suggests that the Legislature intended to convey the impossibility of reaching a fair and impartial verdict, not the absolute impossibility standard the majority imposes. See Howard , 221 Kan. at 55-57, 557 P.2d 1280 ; Gray , 189 Kan. at 399-401, 369 P.2d 330 ; Hansford , 76 Kan. at 682-83, 92 P. 551.
Consistent with the Kansas Legislature's intent and the caselaw of this and other courts, this court in State v. Johnson , 261 Kan. 496, 499, 506, 932 P.2d 380 (1997), held the mistrial and double jeopardy statutes complement each other: " K.S.A. 22-3423 also lists exceptions to double jeopardy protection." The Johnson court recognized the judge's duty to conduct a fair trial may create a manifest necessity of a mistrial and, under those circumstances, a later prosecution would not violate Kansas' double jeopardy statute. 261 Kan. at 500, 932 P.2d 380 ; see K.S.A. 22-3423(1)(c) (allowing mistrial when "[p]rejudicial conduct, in or outside the courtroom, makes it impossible to proceed with the trial without injustice to either the defendant or the prosecution").
Under Johnson and the other cases, because the trial judge appropriately determined the jury could not reach a fair and impartial verdict and a mistrial was appropriate, K.S.A. 2018 Supp. 21-5110 does not act as a bar to a second prosecution of Bowman.
3. Constitutional double jeopardy protections do not prevent a retrial.
The remaining question is the one primarily argued by Bowman: Even if the mistrial was appropriate and a second prosecution was not statutorily barred, do the United States and Kansas Constitution Bill of Rights allow a second trial? I conclude they do.
*468 The Double Jeopardy Clause in the Fifth Amendment to the United States Constitution provides: "No person shall ... be subject for the same offence to be twice put in jeopardy of life or limb." The Fourteenth Amendment to the United States Constitution makes this prohibition applicable to the states. Benton v. Maryland , 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L.Ed.2d 707 (1969). The Kansas Constitution Bill of Rights § 10 also provides: "No person shall ... be twice put in jeopardy for the same offense." We have recognized this right to be coextensive with the protections of the Fifth Amendment to the United States Constitution. See State v. Morton , 283 Kan. 464, 467, 153 P.3d 532 (2007) ; see also State v. Miller , 293 Kan. 535, 544, 264 P.3d 461 (2011). As a result, my analysis under the United States Constitution applies with equal force to Bowman's double jeopardy challenge raised under the Kansas Constitution Bill of Rights.
Under the Double Jeopardy Clause of the United States Constitution, jeopardy attaches in a jury trial when the court administers the oath to the jurors. The swearing of the jury is a bright line for when jeopardy attaches. Martinez v. Illinois , 572 U.S. 833, 839-40, 134 S. Ct. 2070, 188 L.Ed.2d 1112 (2014).
If jeopardy has attached, the next question is whether jeopardy ended in a way that allows the State to retry a defendant. Martinez , 572 U.S. at 841, 134 S.Ct. 2070 (citing 6 LaFave, Criminal Procedure § 25.1 [g] [3d ed. 2007] ). The "fountainhead" case establishing the standard courts apply when answering this question is United States v. Perez , 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824). See Illinois v. Somerville , 410 U.S. 458, 461, 93 S. Ct. 1066, 35 L.Ed.2d 425 (1973).
The Perez Court considered whether the government could retry Josef Perez for a capital offense after the first jury could not agree on a verdict. Justice Story writing for the Court explained defendants may be subject to a second trial if a manifest necessity prompted the declaration of a mistrial to avoid a defeat of "the ends of justice":
"We are of [the] opinion, that the facts constitute no legal bar to a future trial. The prisoner has not been convicted or acquitted, and may again be put upon his defence. We think, that in all cases of this nature, the law has invested Courts of justice with the authority to discharge a jury from giving any verdict, whenever, in their opinion, taking all the circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. They are to exercise a sound discretion on the subject; and it is impossible to define all the circumstances, which would render it proper to interfere. To be sure, the power ought to be used with the greatest caution, under urgent circumstances, and for very plain and obvious causes; and, in capital cases especially, Courts should be extremely careful how they interfere with any of the chances of life, in favour of the prisoner. But, after all, they have the right to order the discharge; and the security which the public have for the faithful, sound, and conscientious exercise of this discretion, rests, in this, as in other cases, upon the responsibility of the Judges, under their oaths of office." (Emphases added.) 22 U.S. (9 Wheat.) at 580.
Defining the contours of "manifest necessity" and the "ends of public justice" has led to several cases. Over time, "manifest necessity" has become the focus of the inquiry. See 6 La Fave, Criminal Procedure § 25.2(c) (4th ed. 2015).
The United States Supreme Court elaborated on "manifest necessity" in Washington , 434 U.S. 497, 98 S.Ct. 824, 54 L.Ed.2d 717. As I have discussed, there, like here, counsel made statements during opening arguments about inadmissible evidence. The judge found the comments so prejudicial, he granted a mistrial. The Court upheld the mistrial determination but explained that holding did not answer whether the defendant was subject to another prosecution.
The Washington Court took steps to balance a defendant's right to have the trial completed by the empaneled jury with the public interest of a fair and impartial verdict by holding that a prosecutor bears the heavy burden of establishing that manifest necessity supports a mistrial declared over a defendant's *469 objection. Manifest necessity is a fact-specific standard that cannot be applied mechanically. And "it is manifest that the key word 'necessity' cannot be interpreted literally; instead, contrary to the teaching of Webster, we assume that there are degrees of necessity and we require a 'high degree' before concluding that a mistrial is appropriate." 434 U.S. at 506, 98 S.Ct. 824.
The Court identified a sliding scale of scrutiny to be applied by an appellate court reviewing a trial judge's mistrial declaration. See Colvin v. Sheets , 598 F.3d 242, 253 (6th Cir. 2010). The lowest level of scrutiny applies when a trial judge declares a mistrial based on his or her belief the jury cannot reach a legal verdict. See Washington , 434 U.S. at 506-09, 98 S.Ct. 824. The highest level or "strictest scrutiny is appropriate when the basis for the mistrial is the unavailability of critical prosecution evidence, or when there is reason to believe that the prosecutor is using the superior resources of the State to harass or to achieve a tactical advantage over the accused." 434 U.S. at 508, 98 S.Ct. 824 (citing Downum v. United States , 372 U.S. 734, 83 S. Ct. 1033, 10 L.Ed.2d 100 [1963] ). The Court determined the issue leading to the mistrial in George Washington, Jr.'s, trial fell "along the spectrum of trial problems ... in an area where the trial judge's determination is entitled to special respect." 434 U.S. at 510, 98 S.Ct. 824. The Court deferred to the trial court's assessment of bias and reversed the lower federal courts that had found the trial judge's declaration of mistrial constitutionally flawed. 434 U.S. at 516-17, 98 S.Ct. 824.
In my view, Washington resolves the double jeopardy issue here. Bowman's trial, like Washington's, ended in a mistrial because of prejudicial comments in the opening statement about evidence that would not be admissible at trial. The trial judge's assessment that these statements were so prejudicial that the jury could not reach a fair and impartial verdict is entitled to special respect. The mistrial was a manifest necessity and a subsequent prosecution is not constitutionally prohibited.
Bowman, however, seizes on Washington to support his argument that the strictest scrutiny should apply here. He does so because of the Washington Court's recognition that the strictest scrutiny applies when "the basis for the mistrial is the unavailability of critical prosecution evidence." 434 U.S. at 508, 98 S.Ct. 824. Bowman, like the majority, focuses on the child not testifying as the reason for the mistrial. And certainly the child's unavailability caused the chain reaction that led the trial judge to view the prosecutor's comments as prejudicial. Perhaps because of this, the trial judge used a strict scrutiny standard in determining a second prosecution would not violate constitutional double jeopardy protections. I also recognize some ambiguity about whether two levels of consideration apply here-one to the counts that did not depend on the child's testimony and the other to those that did. No one has discussed this possibility, and I have found little guidance. It also is not clear that the strictest level of scrutiny applies in every case in which a witness is unavailable. But the caselaw of other courts provides some guidance, and the trial judge's conclusions are consistent with the various factors considered by those courts.
In citing the strict scrutiny standard, the Washington Court merely characterized the holding in Downum . The facts of Bowman's first trial differ in kind from those in Downum , where, before the court empaneled the jury, the State knew one witness was not present and had not yet been located. The Downum Court "refuse[d] to say that the absence of witnesses 'can never justify discontinuance of a trial.' " Downum , 372 U.S. at 737, 83 S.Ct. 1033 (quoting Wade v. Hunter , 336 U.S. 684, 691, 69 S. Ct. 834, 93 L.Ed. 974 [1949] ).
This statement leaves dangling the questions of whether the strictest scrutiny always applies when a prosecution witness is unavailable and, even if applied, whether its application precludes declaring a mistrial depending on the reason the evidence has become unavailable. The State presents two lines of cases in arguing the trial judge did not err.
According to the State, one line supports the conclusion a mistrial is constitutionally permissible when some fatal defect occurs in *470 the proceedings. It cites three United States Supreme Court cases for this proposition: Illinois v. Somerville , 410 U.S. 458, 471, 93 S. Ct. 1066, 35 L.Ed.2d 425 (1973) (holding manifest necessity supported granting mistrial when indictment was fatally defective under state law because the "defendant's interest in proceeding to verdict is outweighed by the competing and equally legitimate demand for public justice"); Lovato v. New Mexico , 242 U.S. 199, 201-02, 37 S. Ct. 107, 61 L.Ed. 244 (1916) (holding trial judge acted within discretion in dismissing jury to arraign defendant and take plea before reimpaneling and swearing same jury for trial); and Thompson v. United States , 155 U.S. 271, 274, 15 S. Ct. 73, 39 L.Ed. 146 (1894) (holding manifest necessity supported mistrial when trial judge learned jury included a juror who had served on indicting grand jury). None involves a witness' failure to testify. The procedural irregularities that may have supported manifest necessity in those cases differ from the child witness freezing on the stand here. I, thus, do not find them helpful when analyzing the circumstances of this case.
More applicable is the second line of cases cited by the State. In those cases, courts found manifest necessity justified a mistrial when a prosecution witness became unavailable. Bowman, on the other hand, highlights four different decisions in which a prosecution witness was unavailable and argues they support his position. But three of Bowman's cases do not involve child witnesses. The one that does involves a 15 year old and very different facts. In addition, each is distinguishable because the prosecution either took no steps toward securing the witness' testimony or knew the witness was unavailable but allowed the jury to be sworn in anyway. These circumstances weighed on each court's decision to apply the strictest scrutiny when reviewing a mistrial order. See State v. Gutierrez , 333 P.3d 247, 254-55 (N.M. 2014) (recognizing that prosecutor had substantial reason before the court empaneled jury to question whether defendant's 15-year-old daughter would appear to testify based on her failure to appear for a pretrial interview and her repeated attempts to recant her testimony but prosecutor allowed jeopardy to attach by allowing court to administer oath to jury before determining if witness was present); Walck v. Edmondson , 472 F.3d 1227, 1238-41 (10th Cir. 2007) (holding double jeopardy protections applied when prosecution knew during voir dire that pregnant witness was in labor but still allowed jury to be sworn); United States v. Stevens , 177 F.3d 579, 587-89 (6th Cir. 1999) (holding double jeopardy protections applied when government lacked proof because its key witness refused to testify after repeatedly suggesting he would not do so out of fear for the safety of his family); McNeal v. Hollowell , 481 F.2d 1145, 1152-53 (5th Cir. 1973) (holding double jeopardy protections applied when government's case lacked proof after witness, who had participated in the crime, invoked his Fifth Amendment protection against self-incrimination without government seeking an agreement to secure testimony).
As the State argues, these cases cited by Bowman establish that manifest necessity may not support granting a mistrial when the State engages in misconduct, is aware a witness likely would not be available but proceeds anyway, or fails to take necessary steps to assure a witness is available. Unlike these cases, the State notes it took precautionary steps, the witness had given details of the alleged crimes to the detective, the State did not engage in misconduct, the witness was present at trial, and the witness had testified at the competency hearing. The State insists these facts allowed it to, in good faith, believe the witness would testify. The State also argues manifest necessity may support granting a mistrial when critical evidence becomes unexpectedly unavailable through circumstances not anticipated and beyond the prosecution's control.
Many cases support the State's position. In these cases, appellate courts affirmed trial judges who found manifest necessity supported granting a mistrial in those circumstances. E.g., United States v. Mastrangelo , 662 F.2d 946, 951-53 (2d Cir. 1981) (deferring to trial judge's manifest necessity determination after witness killed en route to court to testify when there was a distinct possibility defendant involved in making witness unavailable and government had no fault in *471 circumstances); Ogletree v. State , 300 Ga. App. 365, 366-69, 685 S.E.2d 351 (2009) (holding manifest necessity supported granting mistrial when pregnant witness suffered complications making her unavailable for an uncertain amount of time and prosecutor did not act in bad faith in requesting continuance, applying Georgia Constitution); Davis v. State , 170 Ga. App. 748, 748, 318 S.E.2d 202 (1984) (holding manifest necessity supported trial judge's declaration of mistrial when witness held in secure juvenile shelter escaped and could not be located during brief continuance); McCorkle v. State , 95 Md. App. 31, 61-62, 619 A.2d 186 (1993) (affirming trial judge's exercise of sound discretion in declaring mistrial when key witness became ill and did not appear during trial and State prosecution was unable to locate witness despite doing everything it could to get witness to court); State v. Connery , 100 Nev. 256, 258, 679 P.2d 1266 (1984) (holding manifest necessity supported declaring mistrial when crime victim witness attempted suicide and became unavailable to testify); State v. Dunns , 266 N.J. Super. 349, 366-79, 629 A.2d 922 (1993) (holding although manifest necessity supported mistrial declaration where witness refused to testify even after lengthy period being jailed for civil contempt, dismissal was justified in unique circumstances of case; distinguishing Downum where the unavailability of the witness was due in some part to the prosecutor's lack of preparation); State v. Messier , 101 N.M. 582, 586-87, 686 P.2d 272 (Ct. App. 1984) (holding trial judge properly exercised discretion to declare mistrial when video testimony of child witness was inaudible and live testimony was not a possibility because of earlier ruling the child could not testify without suffering harm).
I find the State's cases more applicable and persuasive. The authors of 6 LaFave, Criminal Procedure § 25.2(c) assimilated 12 factors employed by courts when determining if the mistrial was a manifest necessity when a witness became unavailable, and the State's cases reflect these factors. These factors balance the competing interests of the defendant and the public. See Washington , 434 U.S. at 503-05, 98 S.Ct. 824. Under the facts here, these factors tilt toward a determination that the declaration of the mistrial was a manifest necessity. I will not discuss each factor or the facts supporting the State's position in detail. Suffice it to say the following circumstances support a conclusion the mistrial was a manifest necessity: the State proceeded in conformity with Kansas law, the State moved to present the child's testimony through closed circuit television under K.S.A. 22-3434(a)(1), a competency hearing occurred, the judge allowed a comfort person, the State proceeded in good faith, the judge ruled based on indications the child would testify, the State did not manipulate circumstances so it would gain an advantage in a later prosecution, the judge found the prejudice could not be cured, the judge thoroughly considered alternatives, the judge believed the jury had heard enough of the case to formulate some tentative opinions, the trial had not proceeded so far as to give the prosecution a substantial preview of the defense's tactics and evidence, and, finally, there was nothing unusual about the jury's composition. See 6 LaFave, Criminal Procedure § 25.2(c).
On balance, after examining the circumstances and the trial judge's ruling with strictest scrutiny, I conclude the judge did not abuse his discretion in granting a mistrial here and the State met its burden in establishing that the mistrial was manifestly necessary. The Washington Court's words are appropriate here: "[T]he overriding interest in the evenhanded administration of justice requires that we accord the highest degree of respect to the trial judge's evaluation of the likelihood that the impartiality of one or more jurors may have been affected." Washington , 434 U.S. at 511, 98 S.Ct. 824.
CONCLUSION
In conclusion, I disagree with the majority's interpretation and application of K.S.A. 2018 Supp. 21-5110. I would read that statute and K.S.A. 22-3423 as providing complementary grounds for declaring a mistrial without violating the statutory protection against double jeopardy. And I conclude the trial judge did not abuse his discretion in declaring a mistrial-a mistrial that was a manifest necessity. So a second prosecution will not violate K.S.A. 2018 Supp. 21-5110 or the protections *472 against double jeopardy in the United States and Kansas Constitutions. For these reasons, I would deny Bowman's request for a writ of habeas corpus.
Nuss, C.J., and Stegall, J., join in the foregoing dissent.